In re Larry HUNTER and Mary Ellen
Hunter, Debtors.

Richard JENNEN, Plaintiff,

v.

Larry HUNTER and Mary Ellen
Hunter, Defendants.

Bankruptcy No. 83–00119.
Ancillary No. 83–09003.

United States Bankruptcy Court,
North Dakota.

Dec. 19, 1983.

---

Stephen F. Rufer, Fergus Falls, Minn., for plaintiff.

David T. DeMars, Fargo, N.D., for defendants.

## MEMORANDUM OPINION

WILLIAM A. HILL, Bankruptcy Judge.

This adversary proceeding arises from a complaint brought pursuant to 11 U.S.C. § 523(a)(2)(A) alleging the Defendants to be indebted to the Plaintiff in the sum of $15,965.77 plus interest and further alleging that said sum arose from actions of the Defendants/Debtors which constituted false pretenses, false representations and actual fraud.

The case was tried before the Court on December 8, 1983, and the Court, having received evidence and being otherwise duly advised in the premises, finds the facts relevant to the resolution of this controversy as follows:

## FINDINGS OF FACT

In late November of 1974, the Plaintiff took a vacation trip to Florida and while there visited with the Defendant, Larry Hunter (HUNTER), who at the time resid-

ed in Orlando. The Defendant, Larry Hunter, was a real estate developer who engaged in speculative real estate ventures both personally and through various closely held corporations. At the time of his 1974 visit, Hunter took the Plaintiff on a tour of the Orlando area and showed him material pertaining to several land ventures. During the city tour, Hunter took the Plaintiff past a parcel of real estate on Hughey Avenue and told him that he had controlling interest in a block of land fronting Hughey.

Apparently, at the time the State of Florida was considering construction of a state office building on Hughey Avenue and Hunter, together with other investors operating as Marcon Investment Group, Inc., were attempting to gain controlling interest in an entire block of Hughey property. In order to acquire the entire block, some $300,000 to $500,000 was necessary, and the investment company was actively seeking this financing. As of the time of the Plaintiff's visit, however, the investment group had acquired only an option for the purchase of one building on the block. The Plaintiff was not advised of this fact during his 1974 visit, at the conclusion of which he indicated to Hunter he would be interested in a Florida land investment.

Following the Plaintiff's return to his home in Minnesota, he received a letter from Hunter in which were enclosed a site photo and an Orlando newspaper article. The photo had delineated upon it two city blocks, one labeled 'A' and the other 'B'. In the letter, Hunter refers to block 'A' as his and informs the Plaintiff that block 'A' is one of two locations on Hughey under consideration for the state project. The next communication was a telephone conversation between the Plaintiff and Hunter during which Hunter told the Plaintiff that for $30,000 they could purchase certain property and for $15,000 the Plaintiff would become a 50–50 partner. In fact, the $30,000 was necessary to secure the purchase of the single building in which Marcon Investment Group, Inc. held an option. The Plaintiff was never advised of the full complexity of the Hughey land acquisition but believed that with his payment of $15,000 to Hunter, he would gain a one-half interest in a tract of land fronting Hughey Avenue. In fact, even if the small parcel had been purchased, it was only a small part of a larger package for which substantial financing was missing. The Plaintiff was never advised of this.

Based upon the 1974 Florida visit, Hunter's letter and telephone conversation, the Plaintiff sent Hunter his cashier's check for $15,000 in December of 1974. Hunter used $3,000 of the check as a down payment on a contract for deed for the single building in which Marcon held an option. The contract was not executed by the sellers until December 20, 1974, and was to have been closed ninety (90) days thereafter. The deal was never closed, no further property was acquired on Hughey Avenue, and the Plaintiff never received a deed.

In March of 1975, the Plaintiff received a call from Hunter asking for a loan of $12,-000. The Plaintiff was skeptical because of his prior experience but nevertheless, on March 20, 1975, did send Hunter a check for $12,000, which was cashed on March 24, 1975. Hunter told the Plaintiff he needed the money for real estate taxes coming due on land he owned in the Florida Keys, and it would be repaid in thirty (30) days. Hunter did owe taxes on Florida Keys land at the time, and he did use the $12,000 to pay taxes. After the Plaintiff had sent the check, he became concerned about his security, and further telephone discussions ensued between the Plaintiff and Hunter regarding this transaction and the 1974 land deal. During these subsequent telephone discussions, the Plaintiff expressed concern over the loan because he had received no confirmation on the Hughey land deal. Hunter assured the Plaintiff that they owned the land free and clear and that the Plaintiff could have a mortgage on Hunter's half. The Plaintiff was told by Hunter that a deed and mortgage could be sent by March 31, 1975. Neither were ever sent.

By June of 1975, it became apparent that the Hughey land purchase was never consummated and that the $12,000 loan was not going to be repaid. Negotiations occurred between the parties resulting in the Plaintiff taking a note and mortgage in the

sum of $27,000 against Hunter's personal residence. The mortgage was foreclosed, and the Plaintiff was awarded a deficiency judgment in the amount of $14,715.77. In July of 1976, the parties entered into a further agreement whereby the Hunters agreed to pay the deficiency judgment, plus attorney's fees, costs and interest in the sum of $1,250.00, for a total indebtedness of $15,965.77, the amount claimed as nondischargeable. The agreement does not apportion the fees, costs or interest between the two transactions but rather treats them as stemming from the mortgage and agreement.

## CONCLUSIONS OF LAW

At the conclusion of the Plaintiff's case, the Debtor, Ellen Hunter, moved to dismiss the complaint as against her for failure to prove a cause of action. The Court granted the motion as to Mrs. Hunter because the evidence clearly revealed that she had no meaningful involvement in any of the transactions.

■ As a general rule, the courts, in determining dischargeability of a debt pursuant to section 523(a)(2)(A), have applied a five-part test. *In re Valley,* 21 B.R. 674, 679 (Bkrtcy.Mass.1982); *In re Brewood,* 15 B.R. 211 (Bkrtcy.Kan.1981). In order for a debt to be declared non-dischargeable, there must exist a false representation by the debtor which is known to be false and which was made with the intent to deceive the creditor. Further, the creditor must have reasonably relied upon the false representation and sustained a loss as a result. *In re Houtman,* 568 F.2d 651, 655 (9th Cir. 1978). Finally, the creditor seeking a determination that the debt is nondischargeable has the burden of proving the false pretenses, false representation or actual fraud, by clear and convincing evidence. *In re Newmark,* 20 B.R. 842, 853 (Bkrtcy.E.D.N.Y.1982). Furthermore, the proof adduced must be considered bearing in mind that the exceptions to discharge are to be strictly and narrowly construed against the creditor and liberally construed in favor of the debtor so as to effectuate the Congressional policy of permitting a debtor a fresh start. *In re Rahm,* 641 F.2d 755 (9th Cir.1981), *In*

*re Kleppinger,* 27 B.R. 530 (Bkrtcy.M.D.Pa. 1982).

■ With respect to the Hughey land deal, it is clear that the Plaintiff was persuaded to send Hunter $15,000 by a rosey picture painted for him by Hunter—a picture which was incomplete. Hunter had the obligation to fully advise the Plaintiff of the speculative nature of the deal and the fact that the $30,000 would only be used to buy a small portion of the large area denoted as block 'A'. The Court is convinced that had the true scope and tenuous nature of the Hughey project been told to the Plaintiff, he would not have sent Hunter the $15,000. The Plaintiff was intentionally misled by Hunter into believing that Hunter actually owned the Hughey block when, in fact, at the time all he had was part ownership in an investment company who in turn held an option. The contract for deed to the property was not even signed until after the Plaintiff had sent his money. With respect to this transaction, the Court finds that all elements of section 523(a)(2) are present.

The facts are less clear with respect to the $12,000 loan. It appears from the testimony that the Plaintiff sent Hunter a $12,000 check, despite his concerns, based only upon the assurance that it would be repaid in thirty (30) days which, at the time, may have been a true statement. It was not until after the check had been sent and the check cashed that the Plaintiff inquired of possible security for the loan. The promise made by Hunter regarding a deed and mortgage had nothing to do with the Plaintiff's decision to send the $12,000 check. By the time this conversation occurred, he had already sent the money.

Therefore, the Court finds that the Plaintiff has failed in his burden as to this transaction.

■ We are left with the sum of $15,000 stemming from the land deal as constituting a non-dischargeable debt. The difficult issue is how to apportion the sum already realized from the mortgage foreclosure action. The mortgage taken in June of 1975 was intended to cover both transactions. The foreclosure resulted in a net payment

to the Plaintiff of $12,284.23, leaving an indebtedness of $14,715.77 plus attorney's fees, costs and interest. No testimony was given at trial one way or another on the question of whether the net proceeds were applied to the land transaction or the later loan. Nor was there any testimony as to how the additional costs or fees ought to be divided. The Court concludes that in view of the Congressional mandate of narrow construction, this issue must be resolved in favor of the Debtor. This requires that the Court assume the initial debt reduction was applied to the $15,000 land deal which was the first indebtedness to occur. By this apportionment, the Debtor is left with a $2,715.77 non-dischargeable balance on the $15,000. The $13,250 balance remaining of the instant claim must be attributed to the later $12,000 loan and costs which are dischargeable.

Accordingly, IT IS ORDERED that judgment be entered in favor of the Plaintiff in the sum of $2,715.77, against Defendant Larry Hunter. The Complaint as against Mary Ellen Hunter is hereby dismissed.