**In re Larry HUNTER and Mary Ellen Hunter, Debtors.**

**Richard JENNEN, Plaintiff-Appellant,**

**v.**

**Larry HUNTER and Mary Ellen Hunter, Defendants-Appellees.**

Bankruptcy No. 83–00119.
Ancillary No. 83–09003.
Civ. No. A3–84–28.

United States District Court,
D. North Dakota,
Southeastern Division.

Sept. 4, 1984.

Rufer, Hefte, Pemberton, Schulze, Sorlie, Sefkow & Kershner, Stephen F. Rufer, Fergus Falls, Mn., for Richard Jennen.

DeMars, Turman & Johnson, Ltd., David T. DeMars, Fargo, N.D., for Larry Hunter and Mary Ellen Hunter.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

Appellant Richard Jennen has appealed from a bankruptcy court order entered on January 18, 1984, which denied his motion to amend a judgment entered on December 19, 1983, 36 B.R. 28.

### Procedural Background

In January 1983, Larry and Mary Ellen Hunter filed a petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Washington. Jennen commenced an adversary proceeding in the United States Bankruptcy Court for the Eastern District of Washington seeking a determination of the dischargeability of Hunter's debts to Jennen under 11 U.S.C. § 523. In the interests of justice and for the convenience of the parties and witnesses, the adversary proceeding was subsequently transferred to the United States Bankruptcy Court for the District of North Dakota.

At the close of Plaintiff's case the bankruptcy court dismissed the complaint against Defendant Mary Ellen Hunter, and the dismissal was not appealed. With regard to Defendant Larry Hunter, on December 19, 1983, the bankruptcy court held a $15,000.00 debt owed by Hunter to Jennen was not dischargeable under 11 U.S.C. § 523(a)(2), but that a subsequently incurred debt in the amount of $12,000.00 was dischargeable. Additionally the court held that certain sums previously recovered by Jennen should be applied entirely against the nondischargeable $15,000.00 debt, resulting in an order for judgment in favor of Jennen in the amount of $2,715.77. The bankruptcy court made no findings as to interest or attorney's fees.

On January 18, 1983, the bankruptcy court denied Jennen's motion for amended findings of fact and conclusions of law and additional findings of fact and conclusions of law. Jennen appeals the bankruptcy court's January 18, 1983 order. Jennen argues on appeal that the bankruptcy court erred in finding the $12,000.00 debt to be dischargeable, in its application of proceeds to Plaintiff's debt, and by failing to award attorney's fees, interest and costs to Plaintiff.

### Facts

In November 1974, Plaintiffs vacationed in Florida and visited Defendant Larry Hunter, who is married to Plaintiff's niece. Defendant Hunter was a real estate broker who engaged in speculative real estate ventures, both personally and through closely held corporations.

After returning home to Minnesota, Plaintiff received a letter, a photograph and a newspaper article regarding a proposed development site from Hunter. Plaintiff then received a telephone call from Hunter and was told that for $30,000.00 they could purchase certain property, and that for $15,000.00 Plaintiff would become a 50 percent partner. Plaintiff was led to believe that his payment would entitle him to ownership of a one-half interest in the land, free and clear. In fact, the parcel was never purchased and even if it had been purchased, it was only a small part of a larger transaction for which substantial financing was missing. Plaintiff was never advised of this, and based upon the representations made by Hunter, sent Hunter a cashier's check for $15,000.00 in December 1974. No property was ever placed in Plaintiff's name, despite repeated assurances by Hunter that the purchase had been made.

On March 10, 1975, Plaintiff received a telephone call from Hunter asking for a $12,000.00 loan. Plaintiff was told that the money was needed by Hunter to pay real estate taxes on some land in the Florida Keys. Plaintiff told Hunter he didn't have that kind of money and didn't want to sell any of his stored grain because grain prices were low.

Hunter called Plaintiff again the following day. Plaintiff was told that if he loaned Hunter the $12,000.00, Hunter would repay Plaintiff $13,000.00 within 30 days, after he sold some land. Plaintiff told Hunter that he could maybe come up

with the money by selling some pinto beans, but that he had taxes of his own to pay at the end of May and could only make the loan if Hunter was sure he would repay by then. After receiving this assurance, Plaintiff agreed to make the loan.

From this point on the testimony regarding the sequence of events becomes unclear. Hunter apparently sent Plaintiff a check for $13,000.00. After receiving the check, however, Plaintiff became concerned that $1,000.00 interest on the loan might be illegal. He therefore called Hunter and told him he couldn't accept the check but because they were in business together, if he could help, he would. They agreed that Hunter would pay nine percent interest on the $12,000.00 loan. Rather than sending a check, Plaintiff asked Hunter to send him a promissory note with both his and his wife's signatures on it. Plaintiff then voided and sent back the $13,000.00 check.

Either before or after receiving the $13,000.00 check and note, Plaintiff sent Hunter a $12,000.00 check dated March 20, 1975. After sending the check, however, Plaintiff had second thoughts and informed the bank to stop payment. Hunter was notified by telephone that payment had been stopped. During the course of this or a subsequent telephone conversation, Hunter was able to convince Plaintiff to lift the stop payment order. The check was cashed on March 24, 1975.

The testimony at trial is unclear as to exactly what assurances, if any, Plaintiff was given to convince him to lift the stop payment order. Plaintiff testified that when asked, he informed Hunter that he had stopped payment on the check because he had not received any paperwork regarding the $15,000.00 land purchase. He was then reassured by Hunter that there was nothing to worry about and that he would get at his secretary right away to straighten the matter out. Plaintiff testified that Hunter assured him he had paid for his half of the land, that there was no problems with the land, and that it was all paid for.

Additionally, Plaintiff testified that he inquired about security for the $12,000.00 loan. According to Plaintiff, discussions were had concerning the possibility of Hunter giving Plaintiff a mortgage on his half of their jointly owned land or on a $12,000.00 airplane that Hunter claimed he owned free and clear. In fact, the plane was partially owned by a friend of Hunter's. Plaintiff testified that after being assured by Hunter that the deed and mortgage would be forthcoming and that he would be repaid by the end of May, he lifted the stop payment order. Plaintiff never received a deed or mortgage and the $12,000.00 loan has not been repaid.

Hunter testified that before receiving Plaintiff's $12,000.00 check, Plaintiff had expressed concern regarding his prior $15,000.00 investment. Hunter told Plaintiff he thought they could "pull it off" and testified he didn't know at that time that the additional mortgage financing would not be forthcoming. Defendant further testified that he was able to convince Plaintiff to lift the stop payment by telling him he would be receiving $12,000.00 from the sale of some land soon, but it was imperative he have the money now because he had already written the checks for his taxes. Hunter testified he doesn't remember whether Plaintiff wanted security for the $12,000.00 loan. Likewise he doesn't remember discussing the airplane, which was mortgaged at the time, or Plaintiff's asking him for a mortgage on their jointly owned property, although Hunter testified it was possible he did. Hunter did use the $12,000.00 received from Plaintiff to pay his real estate taxes, but has not repaid Plaintiff.

By June 1975, it became apparent that the land purchase was never consummated and that the $12,000.00 loan was not going to be repaid. Negotiations between the parties resulted in Plaintiff taking a note and mortgage in the sum of $27,000.00 against Hunter's personal residence. The mortgage was foreclosed, and Plaintiff was awarded a deficiency judgment in the amount of $14,715.77. In July 1976, the parties agreed that the Hunters would pay

the deficiency judgment, plus attorney's fees, costs and interest, in the sum of $1,250.00 for a total indebtedness of $15,-965.77, the amount claimed by Plaintiff to be nondischargeable. The agreement did not apportion the fees, costs or interests between the two transactions, but, rather, treats them as stemming from the mortgage and agreement.

### Conclusions of Law

■ Plaintiff obtained a deficiency judgment prior to the Hunters filing their bankruptcy petition. A pre-bankruptcy judgment, although res judicata on the issue of liability, is not res judicata upon the issue of dischargeability of a debt, which constitutes a different cause of action and which is the ultimate issue in a dischargeability proceeding. *In re Schuck,* 13 B.R. 461 (Bankr.Pa.1980). The bankruptcy court is permitted, and indeed may be required, to look behind a lower court judgment in determining dischargeability. *In re Rainey,* 1 B.R. 569 (Bankr.Ore.1979).

### Dischargeability of the $12,000 Loan

■ On appeal Plaintiff argues that like the $15,000.00 debt, the $12,000.00 debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The bankruptcy court made the following conclusions of law regarding the $12,000.00 debt:

> The facts are less clear with respect to the $12,000 loan. It appears from the testimony that the Plaintiff sent Hunter a $12,000 check, despite his concerns, based only upon the assurance that it would be repaid in thirty (30) days which, at the time, may have been a true statement. It was not until after the check had been sent and the check cashed that the Plaintiff inquired of possible security for the loan. The promise made by Hunter regarding a deed and mortgage had nothing to do with the Plaintiff's decision to send the $12,000 check. By the time this conversation occurred, he had already sent the money.
>
> Therefore, the court finds that the Plaintiff has failed in his burden as to this transaction.

In its findings of fact the bankruptcy court did not mention the fact that Plaintiff had stopped payment on the $12,000.00 check, which was lifted after the subsequent telephone discussions and representations by Hunter.

It is the opinion of this court that the $12,000.00 loan is dischargeable. As stated by the bankruptcy court in its December 19, 1983 Memorandum and Order, in order for a debt to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), the debtor must have made a false representation which he knew to be false and which was made with the intent to deceive the creditor. Further, the creditor must have reasonably relied on the false representation and sustained a loss as a result. *See In re Houtman,* 568 F.2d 651, 655 (9th Cir.1978); *In re Valley,* 21 B.R. 674, 679 (Bankr.Mass.1982). The creditor seeking a determination that the debt is nondischargeable has the burden of proving the false pretenses, false representations or actual fraud by clear and convincing evidence. The testimony is unclear as to both the contents and sequence of the assurances given by Hunter that convinced Plaintiff to lift the stop payment order. There is no question that Plaintiff was concerned about the fact he had received no paperwork regarding the $15,000.00 land transaction. Both Plaintiff and Hunter testified that this subject was discussed in virtually every conversation between them. However, Plaintiff's main concern regarding the $12,000.00 loan appears to have been getting repaid prior to the time his taxes were due. Security for the loan appears to have been a secondary concern. Additionally it is unclear whether Hunter's representations, if any, regarding the deed and mortgage were made before or after the stop payment order was lifted.

On the basis of the record, the court finds the $12,000.00 debt to be dischargeable.

### Apportionment of Money Received by Plaintiff

■ After finding the $15,000.00 nondischargeable and the $12,000.00 dischargea-

ble, the bankruptcy court applied the $12,-284.23 realized by Plaintiff from the foreclosure sale to the nondischargeable $15,-000.00 debt, the first indebtedness to occur, leaving a $2,715.77 nondischargeable balance. The bankruptcy court held that the $13,250.00 balance of Plaintiff's claim was attributable to the later $12,000.00 loan and costs, which are dischargeable.

The $14,715.77 deficiency judgment resulted from foreclosure of a mortgage on Hunter's personal residence. The mortgage was given as a result of Hunter's being indebted to Plaintiff in the sum of $27,000.00. Two distinct debts, a nondischargeable $15,000.00 debt and a dischargeable $12,000.00 loan formed the basis of the $27,000.00 mortgage. There is clear and convincing evidence in the record that the $15,000.00 obligation arose out of a fraudulent transaction. The record with regard to the $12,000.00, although suggesting fraud, is not so clear and convincing so as to render this obligation nondischargeable.

Because the debt is represented by a judgment indivisible on its face, and by reason of the fraud proven in the case, it is the opinion of the court that Plaintiff is entitled to a proportionate allocation of the payment received to each debt represented by the total mortgage.

Because the fraudulently induced $15,-000.00 debt represents 56 percent of the total indebtedness, 56 percent of the proceeds of the foreclosure sale, or $6,879.17, should be applied against it, leaving the debtor with a $8,120.83 nondischargeable balance.

*Attorney's Fees, Interests and Costs*

■ Plaintiff's claim includes $1,250.00 in attorney's fees, costs and interest that the Hunters agreed to pay in July 1976. No testimony was presented as to how these costs and fees should be allocated. The bankruptcy court held that the $1,250.00 was a part of the balance remaining attributable to the $12,000.00 loan and costs which were dischargeable.

It is the opinion of the court that Plaintiff is not entitled to recover his attorney's fees, costs and interest. The agreement to pay the $1,250.00 was entered into after Plaintiff had obtained his deficiency judgment. Rule 7054 of the Rules of Bankruptcy Procedure provides that the court may allow costs to a prevailing party on a judgment. Such an award, however, is discretionary with the court. Additionally, the Rules make no provision for an award of attorney's fees to a prevailing creditor in a dischargeability proceeding. Likewise, no showing has been made that Plaintiff is entitled to enforcement of the agreement and recovery of interest.

IT IS ORDERED the Judgment of the Bankruptcy Court is affirmed as modified.