In re Rebecca Ann WILSON, Debtor.

CASTNER KNOTT CO., Plaintiff,

v.

Rebecca Ann WILSON, Defendant.

Bankruptcy No. 380–00268.
Adv. No. 380–0168.

United States Bankruptcy Court,
M. D. Tennessee.

June 25, 1981.

David N. Shearon, Nashville, Tenn., for plaintiff.

H. Philip Sadler, Donelson, Tenn., for defendant.

## MEMORANDUM

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

The remaining issue to be resolved in this adversary proceeding is the appropriate

measure of relief to be afforded a creditor when a debt is excepted from the discharge under 11 U.S.C. § 523(a)(2)(A)

> for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
>
> (A) false pretenses, a false representation, or actual fraud, . . . .

In a memorandum previously entered herein, the court concluded that the plaintiff creditor was entitled to relief under this provision of the Bankruptcy Reform Act of 1978. In ninety separate credit-card transactions consummated during a period of approximately thirty days just after she received her card, the debtor purchased on credit from the plaintiff's department stores various goods with a total retail value of $2,339.58. Within less than thirty days after the last transaction, she filed her petition for relief in this court. It was apparent to the court that the debtor, a young woman employed as a guard at a penal institution with a take-home pay of approximately $600 per month, never had any intention of paying plaintiff for any of the goods which she so purchased.

In the prior memorandum the court cited a number of decisions by other bankruptcy courts to the effect that adversary proceedings such as this under the comparable provision of the Bankruptcy Act of 1898 sound in tort and that, accordingly, a creditor's recovery is governed by the appropriate measure of damages in tort actions. In several of those decisions the courts denied recovery of attorneys' fees and interest as provided in the contract with the debtor, and in one, *In re Masek*, 1 Bankr.Ct.Dec. 56 (N.D.Iowa 1974) (B.J.), the court limited the recovery of a department store creditor to the wholesale cost of the goods acquired by the debtor. The plaintiff in this proceeding objected to this limitation on its recovery, and a post-trial hearing was held on the damages issue.

The plaintiff insists that the wholesale cost of the goods, which totaled $1,056.48 [1], is not the appropriate measure of relief and argues in effect that it is entitled to the benefit of its bargain with the debtor. The plaintiff insists that judgment should be entered for the total amount of the sales slips executed by the debtor, which reflect not only the retail prices of the goods but also applicable sales taxes, plus finance charges on this total amount computed at the rate of one and one-half percent per month as provided in the credit-card agreement with the debtor. Although that agreement also obligates the debtor to pay attorneys' fees, the plaintiff does not seek recovery of such fees in this proceeding.

There appear to be no reported decisions as yet addressing the issue of the measure of relief available to a creditor under this provision of the Bankruptcy Reform Act of 1978. The comparable provision in § 17(a)(2) of the prior Bankruptcy Act of 1898 excepted from the discharge debts which were "liabilities for obtaining money or property by false pretenses or false representations." 11 U.S.C. § 35(a)(2) (1976). The changes made by Congress in carrying this exception over into the new law do not appear to be material to the measure-of-relief issue. The addition of actual fraud as a ground for relief reflects the case law construing § 17(a)(2) of the old Act as requiring a creditor to prove positive fraud in order to come within the false representations exception.

> It is the settled doctrine of this court that "fraud" in the Act of Congress defining the debts from which a bankrupt is not relieved by a discharge in bankruptcy means "positive fraud, or fraud in fact involving moral turpitude or intentional wrong, as does embezzlement, and not implied fraud or fraud in law, which may

---

1. Because the debtor had purchased a large number of relatively inexpensive goods, many of them cosmetic items, it was impractical for the creditor to ascertain the exact wholesale cost of each item. The attorney for the creditor proposed, without objection from the attorney for the debtor, that the wholesale cost be approximated by utilizing the average mark-up by department. The total wholesale cost of $1,056.48 was arrived at in this manner. No proof was offered as to any other out-of-pocket expenses which the plaintiff might have incurred in acquiring and maintaining the goods in its inventory.

exist without the imputation of bad faith or immorality." *Neal v. Clark*, 95 U.S. 704, 709 [24 L.Ed. 586] [other citations omitted].

*Ames v. Moir*, 138 U.S. 306, 311, 11 S.Ct. 311, 312, 34 L.Ed. 951, 954 (1891). The legislative history of 11 U.S.C. § 523(a)(2) indicates that § 17(a)(2) of the old act was "modified only slightly." H.R.Rep.No.95–595, 95th Cong., 1st Sess. 363 (1977); S.Rep. No.95–989, 95th Cong., 2nd Sess. 78 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Thus the decisions considering the measure of relief available to creditors under § 17(a)(2) of the old Act cited by the court with approval in prior memoranda in this and other proceedings, e. g., *Beard v. Beard*, 5 Bankr.Ct.Dec. 680 (M.D.Tenn.1979) (B.J.), are pertinent. After considerable reflection, for reasons which will be discussed below, the court has concluded that the rationale of those decisions is not persuasive and that the creditor's position in this proceeding is sound and the one which is the most consistent with the policies of federal bankruptcy law.

In nonbankruptcy causes of action arising out of transfers of property induced by fraudulent representations, courts generally apply one of two rules in determining the extent of relief available to the injured party—either the out-of-pocket rule or the benefit-of-the-bargain rule. 37 Am.Jur.2d *Fraud and Deceit* § 342 (1968); Annot., 13 A.L.R.3d 875 (1967). The out-of-pocket rule limits the injured party's recovery to the actual loss sustained. 37 Am.Jur.2d, *supra*, § 355. Its chief virtue is its certainty and ease of application. Its principal disadvantage is that it

> does not discourage fraud, since the fraudulent party takes no chance of losing anything because of his fraud: if he is not called to account, he enjoys his plunder; if he is called to account, he merely gives back what was not rightfully his, and thus is no worse for the fraud. It has been said in this respect that if active fraud is to carry no greater penalty than to make price and value agree, honesty will not be much encouraged.

37 Am.Jur.2d *supra*, § 356 (citations omitted). Federal courts generally have applied the out-of-pocket rule in federally created causes of action for fraud. *See* Annot., 13 A.L.R.3d, *supra*, at 912. Indeed, this rule is sometimes referred to as the federal rule. In a recent securities fraud case, however, the court noted the inequitable result of the application of the out-of-pocket rule to the facts of that case and, in allowing the plaintiff a recovery more consistent with the benefit-of-bargain rule, observed pertinently:

> Of course, the out-of-pocket rule is not a talisman. Indeed, this court has shown no hesitation in varying that measure when necessary on the facts of a given case. Our function is to fashion the remedy best suited to the harm.

*Garnatz v. Stifel, Nicolaus & Co.*, 559 F.2d 1357, 1360 (8th Cir. 1977) (citations omitted).

The benefit-of-the-bargain rule evolved in cases in which the guilty party had misrepresented the value of property transferred to the injured party. Essentially

> [t]his rule compels the party guilty of fraud to make good his representations, and under its operation the parties are placed in the same position as if the contract and representations had been fully performed. It follows from this rule that the measure of damages in a tort action for fraud in the sale of personal property is the same as in actions for breach of warranty, and requires the person disposing of the property to make good his representations just as though he had given a warranty to that effect.

37 Am.Jur.2d, *supra*, § 353 (citations omitted). The chief virtue of the benefit-of-the-bargain rule is that it prevents a person from committing fraud without the possibility of loss. 37 Am.Jur.2d, *supra*, § 354; Annot., 13 A.L.R.3d, *supra*, at 883. The only real objection to its application relates to the difficulty of proof and the sometimes speculative nature of the damages. Annot., 13 A.L.R.3d, *supra*, at 883.

The court has been unable to uncover any nonbankruptcy cases in which either of

these rules has been applied in precisely the same factual situation before the court in this proceeding. This is due to the fact that creditors seeking the same recovery in non-bankruptcy cases obviously would be entitled to recover on the contract. These tort-action rules generally are applied when the seller of property has misrepresented its value. In this proceeding the court is faced with the converse, the purchaser's having made the misrepresentations. The nonbankruptcy cases which are most analagous are those involving loan transactions in which creditors have held parties liable in tort who were not obligated on the contract for misrepresentations as to the value of collateral or as to the financial condition of the borrower. 37 Am.Jur.2d, *supra*, § 374.

In each of the reported bankruptcy court decisions focusing on the measure of relief available to defrauded creditors under § 17(a)(2) of the old Act, the courts have applied the out-of-pocket rule, although not necessarily by name. In only one of those opinions did the court discuss the applicability of these rules to a § 17(a)(2) proceeding. *Beneficial Finance Co. v. Peterson*, 2 Bankr. Ct.Dec. 215 (D.Or.1976) (B.J.) In that proceeding the court had entered judgment for the plaintiff finance company apparently for the amount of cash advanced to the debtor in a loan transaction with interest on that amount at the legal rate provided by state statute. The creditor filed a motion to amend the judgment to include attorneys' fees and additional interest at a higher rate as provided in the contract. The court acknowledged that one issue before it was whether it should apply the benefit-of-the-bargain rule of damages. In briefly discussing both rules, the court noted that the benefit-of-the-bargain rule was generally applied in warranty cases. The court focused on Oregon law and concluded that the courts of that state applied the out-of-pocket rule. In addition, the court noted that the benefit-of-the-bargain rule

> has been restricted to sale cases involving the misrepresentation of goods or services where the damages awarded had a direct relationship to the misrepresentation. It would be a distortion of both the rule and

> Sec. 17 of the Bankruptcy Act to apply the rule in the present case, which does not involve a sale.

*Id.* at 216. The court also expressed the opinion that application of the out-of-pocket rule was more consistent with the fresh start to be afforded debtors under federal bankruptcy law:

> Congress did not intend to continue punitive rules which resulted more in profit to a particular class of creditor, rather than in restoration to a defrauded creditor and in rehabilitation to the offending debtor.

*Id.* at 217. Thus the court denied the motion to amend the judgment.

In two subsequent opinions, which were obviously influenced by *Peterson*, the bankruptcy court for the Middle District of Florida denied creditors recovery of attorneys' fees in § 17(a)(2) proceedings. In the first, the court cited *Peterson* and noted that

> [i]n Florida, damages recoverable in a tort action are limited to those which will restore the victim to the position he or she would have been in had the wrong not been committed. A breach of contract recovery, however, is as if the contract had been fulfilled—performance of the bargain—not mere restoration to one's former position as in tort.

*Barnett Bank v. Legge*, 3 Bankr.Ct.Dec. 1299, 1300–01 (M.D.Fla.1977) (B. J.) (citations omitted). In the second opinion, the court merely quoted at some length from *Legge*. *Household Finance Corp. v. Thomas*, 4 Bankr.Ct.Dec. 147 (M.D.Fla.1978) (B.J.). In both opinions, however, the court appears to have allowed interest at the contract rate up to the date of the filing of the petition.

The remaining reported bankruptcy court decisions addressing this issue are *In re Masek, supra,* and *Mechanics Bank v. DiPrisco,* 2 Bankr.Ct.Dec. 1724 (N.D.Cal.1977) (B.J.), both of which deal with factual situations analogous to that before the court in this proceeding. Both involved bankrupts who had gone on similar shopping sprees with their credit cards. The Maseks had made purchases from a department store

company utilizing a card issued by the company. DiPrisco had made charges using a credit card issued by a bank. In *Masek* the court, without citation to authority, merely concluded:

> This action sounding in tort, the damages to Sears would be limited to the wholesale value of the goods with which they parted on the basis of the false representation or pretense involved.

1 Bankr.Ct.Dec. at 59. In *DiPrisco* the court did not focus on the two rules used in measuring damages in tort actions but rather considered whether it was appropriate for the issue of dischargeability to sound in tort while the measure of liability was based on the contract and concluded

> that a tort measure of damages must be applied to determine the amount of judgment. Plaintiff's pecuniary loss is equivalent to the amounts charged by the bankrupt, $2957.22. Neither attorney fees nor the contract rate of finance charges area allowable.

2 Bankr.Ct.Dec. at 1726.[2] The court allowed interest at the California statutory rate of 7% per annum. The court did note that the running of interest on nondischargeable debts does not stop with the filing of the bankruptcy petition, a requirement that is limited to claims against the estate.

These five opinions appear to be the only reported bankruptcy court decisions which have addressed the measure-of-relief issue. The court has been unable to uncover any decisions by a circuit court of appeals directly in point. A significant recent opinion by the Ninth Circuit does bear on this issue, however. In that case the bankrupt sought a recovery of attorneys' fees incurred in successfully defending against a complaint by a creditor seeking to except its debt from the discharge pursuant to § 17(a)(2) of the old Act on the ground that an Oregon statute made the attorneys' fees clause in the creditor's note reciprocally binding.

*Grove v. Fulwiler*, 624 F.2d 908 (9th Cir. 1980). In a reversal of roles, the creditor argued that its complaint sounded in tort, that it accordingly was unable to recover attorneys' fees as provided in the contract, and that the bankrupt thus was precluded from doing so. In ruling in favor of the creditor, the court stated pertinently:

> We conclude that Section 17(a)(2) created a purely federal cause of action designed to implement the policies of the former Bankruptcy Act. Though elements of proof associated with both tort and contract actions may have been present in many non-dischargeability proceedings, Section 17 fell into neither classification. While it is true that a bankruptcy court had ancillary jurisdiction under § 17(c)(3) to render judgments on debts found to be non-dischargeable, such jurisdiction was insufficient to render a non-dischargeability proceeding as one in "tort" or "contract."
>
> In any event, the award of attorney's fees in a bankruptcy proceeding should rest upon a firmer foundation than the semantical characterization of a particular proceeding.

*Id.* at 910.

*Fulwiler* mandates a re-evaluation of the bankruptcy court decisions discussed above. This court concurs with the Ninth Circuit's conclusion that dischargeability proceedings under § 17(a)(2) of the old Act were purely federal causes of action. Obviously if such were federal causes of action under the old Act, they are so under § 523(a)(2) of the new Reform Act. In its legislative history Congress expressly rejected the application of state law in determining such matters as what constitutes alimony or support for purposes of determining the dischargeability of these debts. H.R.Rep.No.95–595, 95th Cong., 1st Sess. 363 (1977). This court also concurs with the Ninth Circuit's obvious dissatisfaction with the rationale of *Peterson*.

---

2. The actual pecuniary loss to the bank was probably less than the amount charged by the bankrupt. This court has under advisement, pending its decision in this proceeding, several bank credit-card dischargeability proceedings in which the proof shows that banks generally purchase the charge slips at a discount.

*Fulwiler* originated in the same bankruptcy court that rendered the decision in *Peterson*, and express reference is made to that opinion as the basis for the lower court's decision. Although the appellate court did not expressly overrule *Peterson* —it affirmed the bankruptcy court's refusal to allow the bankrupt attorneys' fees—it did expressly reject the *Peterson* rationale, both as to reliance upon state law and as to the tort theory of limitation on recovery. Both the *Legge* and *Thomas* cases expressly followed *Peterson*. None of these decisions remain viable in the aftermath of *Fulwiler*.

The rationales of the two other bankruptcy court opinions are also affected. The courts in both *DiPrisco* and *Masek* were apparently unaware that even in a tort action damages may be recovered based upon the injured party's receiving the benefit of his bargain. Limiting relief for the defrauded creditor to its out-of-pocket loss by an out-of-hand reference to the proceeding's sounding in tort obviously is too simplistic an approach to this issue and has been rejected by *Fulwiler*.

In addition, in *DiPrisco* the court placed heavy reliance upon the so-called "fresh cash" cases involving false financial statements for which relief is now provided under § 523(a)(2)(B) of the Reform Act. Those cases were concerned with whether relief should include pre-existing debt renewed when "fresh cash" was advanced upon receipt of the false financial statement. The principal issue in those cases was whether in false financial statement situations relief should be broadened beyond recovery of compensatory damages caused by the fraud.[3] They did not address the issue before the court in this proceeding, which is the appropriate measure of compensatory relief. The leading appellate court case limiting the recovery of a creditor to the "fresh cash" advanced—and thus limiting relief to compensatory damages— expressly contemplates recovery by the creditor of finance charges on the "fresh

cash" as provided in the contract. *Household Finance Corp. v. Danns*, 558 F.2d 114, 116 n.7 (2d Cir. 1977).

The Eighth Circuit noted in *Garnatz* that the court's function in determining the appropriate measure of relief is to fashion the remedy best suited to the harm, and the Ninth Circuit in *Fulwiler* indicated that the measure of relief should be dictated by the policies of federal bankruptcy law. Federal bankruptcy law has long provided relief for debtors as one of its two principal functions, but it has never contemplated relief for any and every debtor from any and every debt. Perhaps the Supreme Court's most frequently quoted passage relating to debtor relief is the following, in which reference twice is made to the *honest* debtor as the one entitled to that relief:

> One of the primary purposes of the bankruptcy act is to "relieve the *honest* debtor from the weight of opressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the *honest* but unfortunate debtor . . . a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.

*Local Loan Company v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citations omitted; emphasis added).

Honesty is, of course, a vague standard, but it has been made specific in both the discharge and the dischargeability provisions of the bankruptcy statutes. There is a presumption that every debtor who seeks relief is honest and is entitled to a discharge. Creditors who object to a debtor receiving this relief have imposed upon them the burden of proving that the debtor comes within one of the specific statutory grounds for denial of discharge. There is also a presumption that discharged

---

**3.** The court has under advisement in another unrelated adversary proceeding the issue of the measure of relief available to a defrauded credi-

tor under 11 U.S.C. § 523(a)(2)(B). *First American National Bank v. Carter*, Adv.Proc.No. 380–0149.

debtors have not defrauded creditors, and any creditor who seeks to have its debt excepted from the discharge on this basis must prove that its debt comes within the fraud exception. This exception to the discharge, like all others, is narrowly construed in favor of the debtor. *E.g., Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717, (1915); *Public Finance Corp. v. Taylor,* 514 F.2d 1370 (9th Cir. 1975). By placing these burdens on creditors the Congress and the courts have implemented the policy of federal bankruptcy law to provide honest debtors with economic rehabilitation. It is obvious, of course, that once a creditor has carried the burden of showing that a debtor is not entitled to a discharge, this policy is no longer applicable. In the opinion of the court, once a creditor has established that a particular debt is excepted from the discharge because of the debtor's fraud, this policy is no longer applicable as to that debt. The debtor was not an honest debtor as to that debt and, as a consequence, is no longer entitled to the benefit of debtor rehabilitation policy considerations.

■ It is apparent that Congress created the fraud exception to the discharge, both in the old Act and in the new Reform Act, to discourage fraudulent conduct and to ensure that relief intended for honest debtors does not inure to the benefit of the dishonest. Nonbankruptcy courts have adopted the benefit-of-the-bargain rule primarily because it discourages fraudulent conduct. If nonbankruptcy courts have adopted that rule for this purpose, how much more compelling it is for the bankruptcy courts to do so in fraud dischargeability proceedings.

If this court were to follow *Masek* and *DiPrisco* and limit the relief of the creditor in this proceeding to its out-of-pocket expenses, the debtor's fraud would be rewarded. She would be enabled not only to obtain the goods at wholesale without payment of sales taxes—something which honest debtors are not able to do—but also to finance their acquisition at the Tennessee statutory rate of interest, which at eight percent is substantially lower than that otherwise available.[4] Such a decision would have the effect of encouraging fraud. If the policy of Congress in creating the fraud exception is to be implemented, bankruptcy courts must measure the relief available to creditors under § 523(a)(2)(A) by the benefit-of-the-bargain rule. The major criticism of this rule relates to the difficulty of proof, which is not present in most fraud dischargeability proceedings. In this proceeding, recovery measured by that rule is more readily susceptible to proof than by the out-of-pocket rule.[5]

■ The court concludes, therefore, that policy considerations require that when a debt is excepted from the discharge under 11 U.S.C. § 523(a)(2)(A), the creditor is entitled to recover compensatory damages proximately caused by the fraud measured by the benefit-of-the-bargain rule. When the debtor has obtained property by fraudulent representations, as in this proceeding, the creditor is entitled to such damages measured by the contract purchase price plus interest and/or finance charges as provided in the contract to the extent valid under applicable nonbankruptcy law.

The creditor in this proceeding does not seek recovery of attorneys' fees as provided in the credit-card agreement. The plaintiff's attorney has suggested in effect that recovery of attorneys' fees in fraud dischargeability proceedings should be considered *sui generis* and that the award of the same may not be appropriate even if recovery on the contract is otherwise permitted. *See Devore v. Greenfield,* 2 Bankr. Ct.Dec. 202 (S.D.Ga.1976). In any event, that is an issue which this court need not resolve at this time since the plaintiff does not seek recovery of those fees in this proceeding.

---

4. The high volume of purchases of identical items, especially in the cosmetics area, suggests that the debtor may have been reselling such items to inmates at the penal institution where she was employed.

5. See footnote 1, *supra*, relative to the method employed by the creditor in computing the wholesale cost of the goods purchased by the debtor.

An appropriate order will be entered awarding the plaintiff creditor judgment in the total amount of the sales slips executed by the debtor together with finance charges at the contract rate through the date of the initial hearing in this proceeding. Thereafter interest shall accrue at the lower legal rate, the court being of the opinion that the debtor should not be penalized for the lengthy period that the court has had this matter under advisement.