**In re Louis D. FASULO, Debtor.**

**BUILDERS LUMBER & SUPPLY CO., INC., Plaintiff,**

v.

**Louis D. FASULO, Defendant.**

**SHELTON SAVINGS & LOAN ASSOCIATION, Plaintiff,**

v.

**Louis D. FASULO, Defendant.**

**CODY'S, INCORPORATED, Plaintiff,**

v.

**Louis D. FASULO, Defendant.**

Bankruptcy No. 5–82–00581.

Adv. Nos. 5–82–0363, 5–82–0333 and 5–82–0379.

United States Bankruptcy Court, D. Connecticut.

Dec. 15, 1982.

John Gasidlo, Yudkin & Young, Derby, Conn., for plaintiff, Builders Lumber & Supply Co., Inc.

Peter T. Donnelly, Winnick, Vine & Welch, Shelton, Conn., for plaintiff, Shelton Savings & Loan Ass'n.

Charles Angelo, Antollino & Angelo, New Haven, Conn., for plaintiff, Cody's, Inc.

Louis D. Fasulo, pro se.

## MEMORANDUM AND ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

These three adversary proceedings were brought by separate creditors for a determination that debts owed to them by the debtor are nondischargeable. In *Cody's, Incorporated,* (Cody's) it is alleged that the debtor "secured credit from the plaintiff by false pretenses or alternatively by actual fraud." In *Shelton Savings & Loan Association,* (Shelton) it is similarly alleged that the debtor defrauded Shelton in connection with three loans. In *Builders Lumber Supply Co., Inc.,* (Builders) it is alleged that the debtor "misappropriated, embezzled or otherwise fraudulently used" funds belonging to the creditor. The first two adversary proceedings seek relief under Code section 523(a)(2)(A).[1] In *Builders,* relief is sought pursuant to Code section 523(a)(4).[2]

### I.

### DISCHARGEABILITY

The debtor-defendant failed to plead or otherwise defend, as a consequence of which a default is hereby entered in each adversary proceeding against the defendant pursuant to Bankruptcy Rule 755(a), and

---

1. § 523. Exceptions to discharge

   (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

   (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

2. § 523. Exceptions to discharge

   (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

   (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

accordingly each of the debts, more fully described below, is found to be nondischargeable.

## II.

## DAMAGES

### A.

In *Cody's,* evidence produced supports a finding that the defendant obtained credit in the amount of $16,087 on an open account between April 17, 1978 and July 15, 1978. I further find that payments in the amount of $2,950 were applied toward that account, leaving a balance of $13,137 as of July 15, 1978. In order to obtain payment of that amount the plaintiff filed a prepetition complaint in the Superior Court of the State of Connecticut. Costs of instituting suit are found to be $69.60. In addition, an attorney's fee of $2,100 was awarded to the plaintiff's attorney in the state court proceeding. The plaintiff now seeks judgment in the amount of $15,306.60 plus interest at the legal rate[3] (established by Conn.Gen. Stat. § 37–3a)[4] from July 15, 1978, the date of the last payment.

In *Shelton,* the defendant defaulted on three separate promissory notes, leaving a balance due on February 5, 1973 of $2,589.99. In an effort to collect on two of the notes, Shelton instituted suit against the defendant and incurred $62.60 in court costs. Attorney's fees of $689.30 were awarded in the state court proceedings and thus plaintiff now seeks judgment in the amount of $3,341.89 plus interest from February 5, 1973 at the legal rate.[5]

In *Builders,* the evidence demonstrated that the defendant misappropriated $1,432.56 over a period of time while employed by this plaintiff. Since the plaintiff cannot determine the precise dates of the misappropriation, interest is sought at the legal rate from February 9, 1981, the date

the defendant stipulated for judgment in the Connecticut Superior Court. In addition, the plaintiff seeks $80.60, representing court costs, and now seeks judgment in the amount of $1,513.16.

### B.

■ An overview of the Bankruptcy Reform Act of 1978 and its predecessor discloses the congressional intent "to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh..." *Williams v. U.S. Fidelity Co.,* 236 U.S. 549, 554–555, 35 S.Ct. 289, 290–91, 59 L.Ed. 713 (1915). Closer scrutiny reveals this congressional design through the limited exceptions to the debts dischargeable under the Code. In an "effort to provide debtors with a meaningful fresh start, Congress limited exceptions to discharge to a relatively few categories of debt. This congressional intent is underscored by legislative history and emphasized by Sections 523(c) and 523(d)..." *In re Joseph A. Ciampi,* 14 B.R. 441, 443 (Bkrtcy. D.Conn.1981). It would therefore appear that claims of nondischargeability of debts under sections 523(a)(2)(A) and 523(a)(4) should be examined with special care. But when, as here, it has been determined that certain debts are excepted from discharge, courts should provide full relief to creditors. As observed in *In re Taylor,* 8 B.R. 806, 811, 7 B.C.D. 317, 320 (Bkrtcy.D.D.C., 1981),

> General equitable principles provide that a party should be made whole. A court of equity will also not, as a general rule, enter a partial or incomplete decree. Rather, the court will strive to award relief which is complete and will dispose of the litigation so as to accomplish full justice. It is also well established that once a court has acquired jurisdiction over a case, that court will retain that jurisdiction and grant full relief, both legal and equitable, as long as it pertains

---

3. No claim was made or evidence offered regarding the applicability of a contract interest rate.

4. Conn.Gen.Stat. § 37–3a provides in relevant part: "[I]nterest at the rate of eight per cent a

year, and no more, may be recovered and allowed in civil actions ...."

5. See note 3 supra.

to the same transaction ... It may, and should do, what is equitable under the circumstances as presented to this Court through the evidence. (notes omitted)

With regard to the issue of damages presented herein, Bankruptcy Judge Hippe observed in a well reasoned opinion in *In re Wilson,* 12 B.R. 363, 7 B.C.D. 1061 (Bkrtcy. M.D.Tenn.1981), that courts are divided on the appropriate measure of relief to be afforded creditors when debts are found to be excepted from discharge due to fraud. Some courts apply the out-of-pocket approach, which limits the creditor to a recovery of the actual loss sustained. This approach tends to support an assessment of interest at the legal rate as opposed to the contracted rate. *See, e.g., In re DiPrisco,* 2 B.C.D. 1724 (Bkrtcy.N.D.Cal.1977). Other courts employ the so-called-benefit-of-the-bargain rule under which damages are measured by the difference between the value of what the defrauded party received and the value of what he would have received had there been no fraudulent misrepresentations. This theory supports an award of interest at the contract rate.

As pointed out in *Wilson, supra* 12 B.R. at 366, "The chief virtue of the benefit-of-the-bargain rule is that it prevents a person from committing fraud without the possibility of loss." The corresponding disadvantage to the out-of-pocket approach is that it "does not discourage fraud, since the fraudulent party takes no chance of losing anything because of his fraud: if he is not called to account, he enjoys his plunder; if he is called to account, he merely gives back what was not rightfully his, and thus is no worse for the fraud," *Id., quoting,* 37 Am. Jur.2d *Fraud and Deceit* § 356 (1968).

▮ I am persuaded by this analysis which discourages fraud. Moreover, this approach is consistent with *Household Finance Corp. v. Danns,* 558 F.2d 114 (2d Cir.1977). In that case the court indicated that finance charges on that portion of a loan fraudulently obtained by a false financial statement were excepted from discharge under Act § 17a(2).[6] *Id.* at 116.[7] I accordingly conclude that damages should be measured by the benefit-of-the-bargain rule.

▮ In the instant proceedings, however, the plaintiffs in *Cody's* and *Shelton* have, as noted above, requested the legal rather than a contract rate of interest, and in *Builders* there was no contract.

Just as the benefit-of-the-bargain rule justifies an award of a contractual interest rate, it also permits the recovery of the creditor's attorney's fee as provided by an agreement between the creditor and debtor. *In re Crosslin,* 14 B.R. 656 (Bkrtcy.M.D. Tenn.1981). Since Connecticut law is in accord with the general rule that attorney's fees are not recoverable absent contractual or statutory authority,[8] I am assuming that such authority was applicable when the state courts awarded damages, as noted above, regarding the claims of Cody's and Shelton.

▮ It is accordingly Ordered as follows:

a. *In re Cody's, Inc. v. Fasulo*

IT IS ORDERED AND ADJUDGED that Cody's is entitled to damages in the amount of \$15,306.60, that \$15,306.60 is not discharged and that the defendant pay the plaintiff \$15,306.60 plus interest thereon at the legal rate from July 15, 1975

b. *In re Shelton Savings & Loan Association v. Fasulo*

IT IS ORDERED AND ADJUDGED that Shelton is entitled to damages in the

---

6. Act § 17a(2) is the predecessor of Code § 523(a)(2)(A) & (B).

7. The principal question before the court in *Danns* was whether a false financial statement submitted by the debtor in renewing a loan rendered his entire debt nondischargeable or only, as the court ultimately held, the amount of the loan obtained fraudulently.

8. *See State v. Bloomfield Const. Co.,* 11 A.2d 382, 126 Conn. 349 (1940); *Theodore Bross Line Const. Corp. v. Ryan Crane Service Corp.,* 345 A.2d 594, 32 Conn.Supp. 181 (Conn.Sup.Ct. 1975).

amount of $3,341.89, that $3,341.89 is not discharged and that the defendant pay the plaintiff $3,341.89 plus interest thereon at the legal rate from February 5, 1973.

c. *In re Builders Lumber Supply Co., Inc. v. Fasulo*

IT IS ORDERED AND ADJUDGED that Builders is entitled to damages in the amount of $1,513.16, that $1,513.16 is not discharged, and that the defendant pay the plaintiff $1,513.16 plus interest thereon at the legal rate from February 9, 1981.