In re Angela Marie
TOUCHARD, Debtor.

HOUSEHOLD BANK, N.A., a National
Banking Association, Plaintiff,

v.

Angela Marie TOUCHARD, Defendant.

Bankruptcy No. 89B–05600.
Adv. No. 89PB–0771.

United States Bankruptcy Court,
D. Utah, N.D.

Nov. 2, 1990.

2. The *Fisher* case was cited with approval by the Tenth Circuit in *In re Reid.*

James Z. Davis, of Ray, Quinney & Nebeker, Ogden, Utah, for Household Bank, N.A., plaintiff.

Joseph M. Chambers, of Preston & Chambers, Logan, Utah, for Angela Marie Touchard, defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

JUDITH A. BOULDEN, Bankruptcy Judge.

This adversary proceeding came on for trial upon the complaint of Household Bank, N.A. (Household) against Angela Marie Touchard (Touchard), the debtor in this chapter 7 case. Household's complaint sought judgment in the sum of $11,146.30 together with interest, costs, and attorney's fees, on a credit card debt owed Household by Touchard, and that the debt be determined nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).[1]

The court has reviewed the documentary evidence, the testimony, demeanor, and credibility of the witness, heard and considered the arguments of counsel, and made an independent review of the applicable law. Based upon the foregoing, the court enters the following Findings of Fact, Conclusions of Law, and Order.

### FINDINGS OF FACT

1. On September 19, 1989, Touchard filed a petition for relief under chapter 7 of the Bankruptcy Code. Household is a national banking association and an unsecured creditor of Touchard.

2. Household's complaint was timely filed.

3. Touchard was a nominally self-employed, twenty-one-year-old high school graduate at the time she made the credit card purchases complained of and was a student when she filed this bankruptcy.

4. Touchard testified that she arranged an unsecured loan from a family friend to finance a housecleaning business that Touchard intended to initiate. No specific date was established for the receipt of the funds. The anticipated loan was to be, at maximum, $15,000. Touchard anticipated her salary from the business was to be between $2,400 and $2,800 gross per month. The repayment terms of the loan were ambiguous. Touchard also anticipated the receipt of $2,000 to $3,000 from her father to be used to finance the housecleaning venture. Touchard asserted that she intended to pay the amounts owing to

Household from the revenue generated from her new business. Touchard produced no corroborating evidence of either loan.

5. On August 24, 1989, Touchard filed a police report claiming that her apartment was burglarized and that over $15,000 in personal property, including recently purchased cleaning supplies to be used in the housecleaning business, was taken. The circumstances of the burglary are not convincing and the court discounts the accuracy of Touchard's testimony regarding this incident.

6. Allegedly, as a result of the theft of the cleaning supplies, the family friend and Touchard's father both declined to advance the funds previously promised, and as a result, Touchard could not generate sufficient income to pay Household.

7. Based upon the circumstances of the case, the demeanor of the witness, and the lack of corroborative evidence, the court finds Touchard's testimony relating to the loans and the theft not credible.

8. Prior to filing bankruptcy, a judgment for $65,000 had been entered against Touchard. In May of 1989, subsequent to entry of the judgment, Touchard discussed with an attorney the effect of filing a petition in bankruptcy and the potential dischargeability of the $65,000 judgment.

9. At the time Touchard incurred the debt which is the subject of this litigation, she was unable to pay her debts as they became due. In addition to the $65,000 judgment, Touchard was also obligated to pay a judgment for approximately $17,000 to the Taft Carbide Federal Credit Union for the use of a Visa share loan, an obligation of $1,893 to Dillard's Department Store, $4,500 to Lomas Bank, U.S.A., for the use of a bankcard, $3,200 to Discover Card, and obligations arising from the use of other house credit cards.

10. In 1986, Household's predecessor in interest issued Touchard a Visa charge card, account no. 4668007013593850, providing an annual percentage rate of 17.90% on any outstanding balance.

11. Touchard made purchases on the Visa account regularly from the time the

---

1. Subsequent citations are to Title 11 of the United States Code unless otherwise noted.

account was opened. Her initial credit limit of $1,000 was eventually increased to $2,500 in early 1989. Touchard did not exceed her credit limit prior to July of 1989. Between March 7, 1988, and July 3, 1989, Touchard's Visa charges averaged approximately $714 per month. She regularly paid at least the minimum payment on the account.

12. The last payment received by Household from Touchard was in the amount of forty-three dollars on July 3, 1989, representing the minimum payment due for the June 8, 1989, statement. Her balance as of the July 9, 1989, billing date was $2,202.06. The balance on the account listed in Touchard's bankruptcy schedule of liabilities was $11,147.00, which amount remains unpaid.

13. Between June 28, 1989, and August 8, 1989, Touchard made purchases on the Visa account totalling $8,912.56, thereby exceeding her credit limit of $2,500 and bringing her account balance to $11,146.30.

14. The purchases made on July 1, 1989, placed Touchard over her $2,500 credit limit. The amount of purchases made in excess of the credit limit after July 1, 1989, totaled $8,646.30.

15. Between June 28, 1989 and July 26, 1989, Touchard made 242 charges.[2] Of those charges, only seventeen were for amounts over fifty dollars.

16. The charges were made primarily at department and specialty stores such as Dillard's Department Store, Macy's, K-Mart, Foot Locker, Mervyn's, and Merle Norman. Touchard testified that between thirty to forty percent of the purchases made were for supplies and goods relating to her housecleaning business, with the balance for personal items. The documentary evidence is inconclusive.

17. Touchard filed her petition for bankruptcy more than forty days after her last purchase made with Household's Visa card.

18. The testimony of Touchard relating to her intention to repay the numerous charges for personal as well as business items from the funds to be derived from the loan from her family friend and her father is not credible.

19. Household retained counsel to institute and prosecute this adversary proceeding. The terms of the Visa application provide the following: "Cardholder agrees to pay if delinquency collection procedures are instituted, reasonable cost of collection, including attorney fees of 25% of the principal, finance charge and court cost if suit is filed, or other cost of collection incurred by bank in the enforcement hereof, whether or not suit is brought." No evidence regarding the amount of attorney's fees and costs incurred therein has been presented to the court.

## CONCLUSIONS OF LAW

From the foregoing Findings of Fact, the court enters the following Conclusions of Law:

1. This adversary proceeding is a core proceeding over which this court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I).

2.

| Date | No. of Charges | Date | No. of Charges |
|------|----------------|------|----------------|
| 6/28/89 | 2 | 7/12/89 | 20 |
| 6/29/89 | 2 | 7/13/89 | 6 |
| 7/01/89 | 5 | 7/14/89 | 17 |
| 7/02/89 | 2 | 7/15/89 | 54 |
| 7/04/89 | 1 | 7/16/89 | 26 |
| 7/05/89 | 5 | 7/17/89 | 6 |
| 7/06/89 | 9 | 7/18/89 | 3 |
| 7/07/89 | 21 | 7/20/89 | 2 |
| 7/08/89 | 6 | 7/22/89 | 2 |
| 7/09/89 | 17 | 7/23/89 | 1 |
| 7/10/89 | 16 | 7/26/89 | 1 |
| 7/11/89 | 15 | | |

Notwithstanding the 242 charges admitted to by Touchard at trial, the court counts 239 charges on the Visa billing statements admitted into evidence. At the highest use of her card, between July 7, 1989 and July 16, 1989, she made an average of 19.8 charges per day.

A final order may be entered by this court subject to review under 28 U.S.C. § 158.

2. Venue is proper under 28 U.S.C. § 1409(a).

■ 3. Household has the burden of proof in objecting to Touchard's discharge and must prove the elements of nondischargeability for false pretenses and false representation by clear and convincing evidence. Bankruptcy Rule 4005; *Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir.1986).

4. Pursuant to section 523(a)(2)(A),[3] any "purchase of goods on credit by a debtor who does not intend to pay therefor, constitutes false representation." 3 *Collier on Bankruptcy* ¶ 523.08 at 523–50 (15th ed. 1988).

5. In order to except Touchard's obligation from discharge, Household must prove by clear and convincing evidence that "the debtor made a [materially] false representation or willful representation; the representation was made with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was reasonable; and the creditor sustained a loss as a result of the debtor's representation." *First Bank of Colo. Springs v. Mullet (In re Mullet)*, 817 F.2d 677, 680 (10th Cir.1987).

■ 6. In ascertaining whether Touchard made a materially false representation or willful misrepresentation, this court adopts the "implied representation" doctrine relating to credit card purchases. Under that doctrine, "credit card purchases include an implied representation that the cardholder has the ability and intention to pay for the charge incurred." *May Co. v. Chech (In re Chech)*, 96 B.R. 781, 783

(Bankr.N.D.Ohio 1988).[4] Touchard's implied representation that she had the current ability to repay the charges incurred was false.

7. Household has proved by clear and convincing evidence that Touchard made a materially false representation, upon which it reasonably relied, and that Household suffered a loss as a result.

■ 8. The court now examines whether Touchard had the required intent to deceive. This court refers to factors[5] other courts in this circuit have used in determining Touchard's intent:

(1) The length of time between making the charges and filing bankruptcy, particularly if the charges were made outside the section 523(a)(2)(C) presumption of dischargeability periods;

(2) the number of charges made and whether multiple charges were made on the same day;

(3) the amount of charges made and whether charges were less than the applicable floor limit;

(4) whether the charges were above the credit limit on the account;

(5) a sharp change in the buying habits of the debtor;

(6) whether or not an attorney had been consulted concerning the filing of bankruptcy before the charges were made;

(7) whether the purchases were made for luxuries or necessities;

(8) the financial condition of the debtor at the time the charges were made;

(9) whether or not the debtor was employed, and if unemployed, the debtor's prospects for employment; and

**3.** § 523. Exceptions to discharge.
 (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
 ....
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

**4.** *But see First Nat'l Bank of Mobile v. Roddenberry*, 701 F.2d 927, 932 (11th Cir.1983).

**5.** This court echoes the admonition that rigid adherence to a list of factors is unwarranted and consequently remains "wary of overemphasizing reliance on any list of indicia or factors. This list is not exhaustive and no single factor ... will automatically establish intention to deceive. These factors serve as guidance only when the Court reviews the totality of circumstances generally." *Williamsport Nat'l Bank v. Sutliff (In re Sutliff)*, 112 B.R. 680, 683 (Bankr. M.D.Pa.1990). Inevitably, the weight accorded each factor will vary with the facts of a given case.

(10) the financial sophistication of the debtor.

*See May Dep't Stores Co. v. Kurtz (In re Kurtz)*, 110 B.R. 528, 529–30 (Bankr.D. Colo.1990); *United Bank v. Favinger (In re Favinger)*, 1988 W.L. 174692 (Bankr.D. Colo.1988). Of the ten factors recited, all but perhaps the last factor are applicable in this case.

 9. Touchard completed making the credit charges over forty days prior to filing for bankruptcy. This enabled all of the purchases to remain outside the forty-day period (which establishes a presumption of nondischargeability) pursuant to section 523(a)(2)(C).

10. Touchard made numerous charges after exceeding her credit limit, many of the charges being made in the same store on the same day for under fifty dollars. Touchard offered no reasonable explanation for this behavior.[6] This pattern of spending diverged remarkably from her previous spending habits.

11. At the time she made the purchases, Touchard had graduated from high school, was nominally self-employed, and had overly optimistic plans of starting a housecleaning business. Furthermore, she was deeply in debt.

12. Touchard first contacted an attorney and was informed of the dischargeability of debts in bankruptcy in May of 1989. Touchard's testimony reveals that more than three months prior to incurring the charges discussed herein, she had at least considered bankruptcy and had consulted an attorney regarding an appeal of a substantial judgment outstanding against her.

13. The majority of Touchard's purchases were for clothing and other personal purposes. Only between thirty to forty percent of the purchases were for purposes relating to her prospective housecleaning business.

14. Cumulatively, the above factors show a clear and convincing intent to defraud. Although the intent to deceive may be inferred from the circumstances in a credit card case,[7] this court need not rely solely on circumstantial evidence.[8] This court finds Touchard's intent to defraud based on her demeanor and credibility as well.

15. Section 523(a)(2)(A) "includes only those frauds involving moral turpitude or intentional wrong, and does not extend to fraud implied in law which may arise in the absence of bad faith or immorality." *In re Black*, 787 F.2d at 505. Touchard's fraud involved intentional wrong.

16. Based upon all the evidence, including the credibility of the witness, this court concludes that Touchard intended to deceive Household and that she incurred the debt to Household by false representation in the abusive use of her Visa credit card.

 17. Household asserts that the entire account balance of $11,146.30 plus interest should be adjudged nondischargeable.

18. The last payment in the amount of forty-three dollars, representing the minimum payment due for the June 8, 1989, statement, was received by Household on July 3, 1989. The balance on the Visa account as of the July 9, 1989, statement was $2,202.06. There is no evidence to support a finding that Touchard did not intend to pay for purchases made before the date Touchard sent the minimum forty-three dollar payment and before she exceeded her credit limit of $2,500.

19. The charges made on July 1, 1989, placed Touchard over her credit limit of

---

6. Usually, charges below fifty dollars undergo only a first-level check to ascertain that the card has not been reported lost or stolen. Fifty dollars is the normal call-in amount for retail department stores. *Flint Area School Employee Credit Union v. Nogami (In re Nogami)*, 118 B.R. 846, 849 (Bankr.M.D.Fla.1990). Therefore, by making charges under the floor limit, the debtor avoids verification of the charges by the card issuer.

7. *Manufacturers Hanover Trust Co. v. Pannell (In re Pannell)*, 27 B.R. 298, 302 (Bankr.E.D.N.Y. 1983).

8. "Fraudulent intent of course may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *Farmer's Co-Op. Ass'n v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982).

$2,500. Although there is no evidence that Touchard received independent written notification [9] from Household that she had exceeded her credit limit, it is reasonable to infer from Touchard's pattern of purchases and from prior Visa billing statements that she knew or should have known her credit limit had been exceeded.

20. "If a creditor can prove by clear and convincing evidence that the debtor obtained credit through fraud, the court should declare the debt nondischargeable in an amount which it can reasonably estimate as obtained by the fraud." *John Deere Co. v. Gerlach (In re Gerlach),* 897 F.2d 1048, 1052 (10th Cir.1990). Therefore, the amount of the debt nondischargeable is $8,646.30; the amount of purchases in excess of Touchard's $2,500 credit limit.

21. Household seeks, in addition to judgment for the account balance, judgment for attorney's fees and cost incurred in this nondischargeability action.

22. Touchard is liable for attorney's fees and costs incurred by Household in initiating and prosecuting this adversary proceeding under the terms of her Visa application to the extent those fees are found to be reasonable by this court.

THEREFORE, it is hereby

ORDERED, that Household is entitled to judgment against Touchard in the amount of $8,646.30 together with interest at the rate of 17.9 percent per annum until the filing of this petition, and at the judgment rate henceforth until paid, and, it is further

ORDERED, that the debt owed by Touchard to Household as set forth above is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), and, it is further

ORDERED, that reasonable attorney's fees as allowed by the court upon subsequent motion are likewise nondischargeable, and, it is further

ORDERED, that Household submit a judgment in accord herewith.

---

**9.** *See generally Manufacturers Hanover Trust Co. v. Cirineo (In re Cirineo),* 110 B.R. 754 (Bankr.E. D.Pa.1990) (debts incurred through the debtor's credit card were nondischargeable only to the extent the purchases were made after receiving notification that the credit limit had been reached). The eleven-page statement dated August 8, 1989, indicated Touchard was $8,646 over her credit limit.