In re Louise Reynolds FREEMAN,
Debtor.

Peter HAVENSTEIN and Stephanie
Havenstein, Plaintiff,

v.

Louise Reynolds FREEMAN, Defendant.

Bankruptcy No. 90–11303–T.
Adv. No. 90–1205–T.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

June 12, 1991.

Paul D. Pearlstein, Pearlstein & Jacques, Washington, D.C. for plaintiff.

Daniel B. Krisky, P.C., Fairfax, Va. for debtor/defendant.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This adversary proceeding was brought by Peter and Stephanie Havenstein against Louise Reynolds Freeman, the debtor, seeking to except from discharge their claim against the debtor pursuant to 11 U.S.C. § 523(a)(2)(A) & (B).

A trial was held on February 7–8, 1991. At the end of the Havensteins' case, the debtor moved this court for an involuntary dismissal pursuant to Bankruptcy Rule 7041. This court granted the motion for the § 523(a)(2)(A) claim. With respect to the § 523(a)(2)(B) claim the motion was taken under advisement.

After considering the evidence presented at trial as well as the briefs submitted by the parties, this court will grant the debtor's motion and dismiss the adversary proceeding with prejudice.

### Facts

■ The debtor filed this chapter 7 case on May 29, 1990. This adversary proceeding was filed by the Havensteins on August 8, 1990. Their claim against the debtor arose out of a contractual relationship between the parties. The facts set forth below were derived by the court from the plaintiffs' presentation of their case. For the purpose of determining the debtor's motion for involuntary dismissal all the evidence presented will be considered.[1]

On August 20, 1986, the debtor entered into a written contract to purchase from the Havensteins a condominium unit in the District of Columbia for a price of $95,000.00. By the agreement, settlement was to occur no later than December 30, 1986.

Concurrent with the purchase agreement, the parties entered into a written agreement titled "Pre–Settlement Occupancy Agreement." By this agreement, the debtor was permitted to occupy the premises from August 22, 1986, until December 30, 1986, at a rental rate of $22.50 per day. The agreement also provided that if settlement did not occur, any deposit under the purchase contract would be forfeited, and rent would accrue at a rate of $100.00 per day for any occupancy on or after January 1, 1987. The pre-settlement occupancy agreement contained a clause which provided:

> If Seller should be required to employ an attorney and/or to utilize legal proceedings to obtain possession of the property, Purchaser agrees to be liable for all attorney's fees and court costs incident thereto.

The debtor also filled out and signed a confidential customer information sheet that required personal and employment information as well as a list of her liabilities and assets. The plaintiffs' evidence established that the debtor's statement contained several material misrepresentations concerning her employment and the extent of her assets and liabilities and that the plaintiffs reasonably relied on the statement in entering into the contract to purchase and the pre-settlement occupancy agreement.

---

1. Fed.R.Civ.P. 41(b) provides in pertinent part:

   After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.
   Fed.R.Civ.P. 41(b).
   Because this motion arises under Fed.R.Civ.P. 41(b), as implemented by Bankruptcy Rule 7041, this court may weigh all of the evidence and may sustain the motion even if the plaintiff has presented a prima facie case. *See Holmes v. Bevilacqua,* 794 F.2d 142, 147 (4th Cir.1986).

The debtor never obtained financing and failed to close on the contract. Nevertheless, she occupied the premises until October 9, 1987. In the meantime, the Havensteins employed counsel to evict the debtor and, in addition, brought an action for specific performance in the Superior Court of the District of Columbia. Sometime in June of 1987, the plaintiffs obtained a judgment against the debtor ordering the debtor to specifically perform the contract to purchase, to pay $18,100.00 for the period from January 1, 1987 to June 30, 1987, and to pay $100.00 per day thereafter until settlement. The superior court order was modified by a May 1988 order that deleted the requirement of specific performance and permitted the Havensteins to retain $1,250.00 from the deposit.

## Discussion

Before this court the plaintiffs put on evidence that the amount of rent due under the orders of the superior court was $28,200.00. Plaintiffs concede having already received a total of $18,869.99 from the debtor since the time of the breach, consisting mainly of a deposit forfeited under the contract and funds garnished by the plaintiffs from an account held by the debtor at Paine Webber.

Between October 1987 and January 1990 the residence was rented out intermittently. In January 1990 it was sold to another purchaser for approximately $103,000.00.

Except for the $28,200.00, the plaintiffs put forth very little persuasive evidence concerning the amount they sought to except from discharge. Mr. Havenstein testified that he lost favorable capital gain tax treatment by not completing a sale prior to 1987. He further testified that he spent approximately $9,000.00 in attempting to evict the debtor, $6000.00 obtaining judgment for specific performance and damages against her in D.C. court, and $1,000.00 in miscellaneous costs. In addition, he claimed that he lost use of the funds he would have received on the sale, as well as incurred continued mortgage and condominium fee obligations until sale in 1990.[2]

## Conclusions

Section 523(a)(2)(B) provides in pertinent part:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for money property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive ...

11 U.S.C. § 523(a)(2)(B).

The creditor seeking exception from discharge carries the burden of proof to establish each element under § 523(a) by a preponderance of the evidence. *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

At the close of the plaintiff's case the court ruled from the bench that the plaintiffs established that: (1) the customer information statement was materially false, (2) the statement concerned the financial condition of the debtor, (3) that the plaintiffs reasonably relied on the statement, and (4) that the debtor completed it with the intent to deceive, or at least with reckless indifference as to its verity. The only remaining issue, then, is whether there exists a debt that satisfies these requirements under § 523(a)(2).

The debtor argued that the plaintiff did not demonstrate a loss that could give rise to a claim excepted from discharge under 11 U.S.C. § 523(a)(2).

Plaintiffs first argue that this court is bound by res judicata. In addition, they

---

**2.** In the memorandum submitted after trial, counsel for plaintiffs made argument from an attached affidavit of Mr. Havenstein, setting forth with greater particularity the amounts in question. Because this affidavit was produced after the close of the plaintiffs' case its contents are not considered here.

urge the court to consider not only the amount awarded by the superior court but also the fees expended by them to evict and obtain judgment against the debtor, the fair market value of rent in the intervening vacancy period, the amount of lost favorable capital gain tax treatment, and punitive damages.

Even if res judicata does not apply, the plaintiffs argue that to the extent the debt was liquidated by the superior court, the only issue to be decided by the bankruptcy court is the dischargeability of the debt. Plaintiffs argue it is the nature of the entire indebtedness, rather than liability and damages, that must be proven to avoid a discharge. At the least, they assert this court should be bound by the D.C. court award under the occupancy agreement.

Whether Res Judicata of Collateral Estoppel Apply

■ Res judicata does not apply to prevent inquiry into the dischargeability of a claim based on a prior state court judgment. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). *See also Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981). Therefore, res judicata is inapplicable to .this proceeding.

Collateral estoppel, however, may bar relitigation of specific issues that were "actually and necessarily decided in a prior suit." [3] *Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988) (quoting *Brown*, 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10). The Fourth Circuit has recently decided that issues determined by a default judgment are not entitled to collateral estoppel effect under § 523(a) since they were not actually litigated. *M & M Transmissions, Inc. v. Raynor (In re Raynor)*, 922 F.2d 1146 (4th Cir.1991).

■ Since the plaintiffs' case did not establish that the specific performance action in superior court was actually litigated, the debtor is not collaterally estopped from litigating the amount subject to exception from discharge.

Whether the Court is Bound by Liquidated Amount

It is clear that by virtue of the false financial statement the plaintiffs entered into the contract to sell and permitted the use of their property pending the expected settlement. However, they did not lose $100.00 a day, which is the baseline measure they expect this court to apply under the D.C. judgment.

■ What the plaintiff's seek to have excepted from discharge is an amount equal to the benefit of their bargain with the debtor. However, § 523(a)(2) is founded in tort, not contract. *Lussier v. Barrup (In re Barrup)*, 37 B.R. 697 (Bankr.D.Vt. 1983). Section 523(a)(2) is designed to recover what was actually lost from the creditor, not what the creditor expected to receive under the contract. Thus, even where a state court fraud judgment is afforded collateral estoppel effect, bankruptcy courts typically limit the § 523(a)(2) exception from discharge to compensatory damages and declare state court punitive damage awards dischargeable. *See, e.g., Larson v. Norris (In re Larson)*, 79 B.R. 462 (Bankr.W.D.Mo.1987); *Dodson v. Church (In re Church)*, 69 B.R. 425 (Bankr.N.D.Tex.1987); *McCullough v. Suter (In re Suter)*, 59 B.R. 944 (Bankr. N.D.Ill.1986).

This conclusion is necessitated by the language of § 523(a)(2), which excepts from discharge a debt only "to the extent

---

**3.** The distinction between res judicata and collateral estoppel is well described by the bankruptcy court in *Stone v. Stone (In re Stone)*, 90 B.R. 71 (Bankr.S.D.N.Y.), *aff'd*, 94 B.R. 298 (S.D.N.Y.1988):

The doctrine of *res judicata,* or claim preclusion, is distinguishable from the principle of collateral estoppel in that *res judicata* forecloses all that which might have been litigated previously by the parties, whereas collateral estoppel treats as final only those issues actually and necessarily decided in a prior suit.

In *Brown v. Felsen,* in dealing with the principle of *res judicata,* the Supreme Court noted in footnote 10 that if a state court determined factual issues in a state law question, using standards identical to those of § 17 of the former Bankruptcy Act (now 11 U.S.C. § 523), the principle of collateral estoppel, in the absence of countervailing policy, would bar relitigation of those issues in the bankruptcy court.

*In re Stone,* 90 B.R. at 74 (citations omitted).

obtained by" the false representation. This language limits the scope of nondischargeability to the actual pecuniary loss. *See Muleshoe State Bank v. Black*, 77 B.R. 91, 92–93 (N.D.Tex.1987); *Church*, 69 B.R. at 434–35; *Suter*, 59 B.R. at 946–47.[4]

This court notes that some courts do apply the "benefit of the bargain rule" on the ground that an award of damages based upon that ground would discourage fraudulent activity. *See Chase Manhattan Bank v. Birkland*, 98 B.R. 35 (W.D.Wash. 1988); *Goodnow v. Adelman (In re Adelman)*, 90 B.R. 1012 (Bankr.D.S.D.1988); *Builders Lumber & Supply Co. v. Fasulo (In re Fasulo)*, 25 B.R. 583 (Bankr.D.Conn. 1982); *Castner Knott Co. v. Wilson, (In re Wilson)* 12 B.R. 363 (Bankr.M.D.Tenn. 1981). However, in my view the vague policy justification for these holdings is too open ended to be compelling and is preempted by the express limitation found in § 523(a)(2).[5]

█ In this case the court is not bound by the liquidated amount. The plaintiffs have already recovered whatever actual loss they suffered. They did not actually lose $100.00 a day. At best all the plaintiffs can recover is for the lost use of the premises during the debtor's period of occupation. The property was occupied in violation of the occupancy agreement for less than nine and one half months. Even accepting the plaintiffs' opinion testimony that the rental value of the property was $700.00–$950.00 per month, the lost rent during this period amounts only to $6,650.00–$9,025.00, well below the $18,-869.99 already collected.

Other damages claimed, such as the continued accrual of mortgage and condominium fees, the lost tax advantage, and the lost use of net funds the Havensteins expected to receive on settlement are mere expectation damages and cannot be considered under § 523(a)(2). Neither can the court award punitive damages under this section because they do not represent actual pecuniary loss to the plaintiffs.

Attorney Fees

The legal fees present a more difficult issue. Typically, attorney's fees may not be awarded under the "American Rule" without specific statutory authority or contractual agreement. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *All American of Ashburn, Inc. v. Fox (In re Fox)*, 725 F.2d 661 (11th Cir.1984). In bankruptcy, where attorney fees are authorized by statute or contract, courts are split as to whether they may be included in a determination of exception to discharge under § 523(a)(2).[6]

However, it is unnecessary for this court to decide the attorney fee question today. Even under the more permissive view that excepts from discharge attorney fees pro-

---

**4.** The quoted language was inserted in the statute by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333. This court is unable to find any legislative history to explain its insertion.

**5.** Note that two of the cases cited predate the 1984 amendments.

**6.** Many courts will allow the fees so long as they are provided for in the underlying contractual relationship. *See, e.g., Transouth Fin. Corp. of Florida v. Johnson*, 931 F.2d 1505 (11th Cir. 1991); *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163 (6th Cir.1985); *Household Bank, N.A. v. Touchard (In re Touchard)*, 121 B.R. 397 (Bankr.D.Utah 1990); *Chase Manhattan Bank v. Birkland*, 98 B.R. 35 (W.D.Wash. 1988). Other courts would deny attorney fees under § 523(a)(2) despite provision for them in the agreement or otherwise under state law. For example, in *Republic Bank v. Smith (In re Smith)*, 72 B.R. 300 (Bankr.M.D.Fla.1987), the

court declared that it would not award attorney fees even if provided for in the contract, on the ground that the congressional intent of providing the debtor with a fresh start would be "best promoted by limiting creditors to simple restitution in a § 523(a)(2) action." *Smith* 72 B.R. at 301.

In *Check Central of Oregon, Inc. v. Barr (In re Barr)*, 54 B.R. 922 (D.Ore.1984), the court declined to award an attorney fee for an exception to discharge based on a returned check even though state law expressly authorized fees for collection actions on returned checks. The *Barr* court interpreted the element of reliance to preclude such an award:

"Although in one sense the attorney's fees debt was "caused" by the debtor's writing the NSF checks, clearly the creditor was not relying on any fraudulent representation of the debtor in authorizing the services underlying the attorney's fee debt."

*Id.* at 925.

vided for under the contract the plaintiffs cannot prevail to recover an additional sum from the debtor. Only the pre-settlement occupancy agreement provided for attorney's fees, and then only for "legal proceedings to obtain possession" of the premises. Under Mr. Havenstein's testimony $9,000.00 was expended to evict the debtor. Even after accounting for the lost rental value as discussed above there remains a more than $9,000.00 cushion in the $18,869.99 already collected from the debtor. Therefore, the amount of any nondischargeable attorney fee has already been recovered.

In summary, this court concludes that the plaintiffs have already collected from the debtor any sum they are entitled to recover of a debt excepted from discharge under § 523(a)(2)(B). Consequently, there being no debt subject to exception from discharge, the debtor's motion for involuntary dismissal will be granted, and this adversary proceeding will be dismissed with prejudice.

The court will enter a separate order.