BRIGHT, Senior Circuit Judge.
In this case the bankrupt, Larry Hunter, owed his creditor, Richard Jennen, a sum of $27,000 exclusive of interest. The $27,-000 sum represented two separate debts: a $15,000 debt that the bankruptcy judge determined to be nondischargeable, and a $12,000 debt that the judge determined to be dischargeable in bankruptcy. The controversy relates to a pre-bankruptcy payment of $12,284.23 to the creditor on the debts which had been combined into a single note, leaving a remaining balance of $14,715.77. The bankruptcy court, 36 B.R. 28, applied the payment to the first debt incurred, the $15,000 nondischargeable debt, leaving as a nondischargeable item the sum of $2,715.77. On appeal, the district court affirmed the underlying determinations of dischargeability, but disagreed with the bankruptcy court’s allocation of the payment entirely against the nondischargeable debt. It held that the payment should be allocated between the two underlying debts on a proportionate basis, leaving the debtor with a nondischargeable balance of $8,120.83. Both sides appeal. We affirm the decision of the district court on the dischargeability and apportionment issues but remand with directions.
I. BACKGROUND.
Jennen vacationed in Florida in November 1974 and visited with Hunter, who at that time was a real estate broker engaging in speculative real estate ventures. After Jennen returned home, he received a call from Hunter in which Hunter stated that he was trying to raise $30,000 to purchase certain property in Orlando. Hunter told Jennen that for $15,000 he would become a 50% partner in the venture, and would have ownership of a one-half interest in the land. Jennen sent Hunter $15,-000 in December 1974 with the understanding that Hunter would invest it in this property. In fact, the $30,000 was intended only for a small parcel of a block and Hunter was attempting to raise financing of some $300,000 to $500,000 to acquire the entire block. Hunter never explained the full complexity of the deal to Jennen, but led him to believe he would have a one-half interest in the entire block for his $15,000 investment. The venture was never closed, and Hunter did not purchase any real estate in Jennen’s name with the $15,000.
Subsequently, in March 1975, Hunter called Jennen again and requested a loan of $12,000, which he needed to pay real estate taxes on some other Florida property he owned (unrelated to the Orlando venture). Jennen was somewhat skeptical, but sent Hunter a check for $12,000 on March 20 on Hunter’s promise that he would repay the loan with 9% interest within thirty days. Jennen then had second thoughts about the loan and stopped payment on the check. After one or two phone conversations, Hunter persuaded Jennen, allegedly by additional misrepresentations, to lift the stop payment order. Hunter cashed the check on March 24 and, in fact, did use the money to pay the taxes.
By June 1975, Jennen had received no payments from Hunter on the $12,000 loan. *1128 He also discovered that the Orlando real estate venture had fallen through. Consequently, the parties entered into negotiations which resulted in Hunter executing a note and giving Jennen a mortgage on his house for $27,000. Jennen subsequently foreclosed, and received $12,284.23 in the foreclosure sale.
On January 18, 1976, the parties entered into an agreement under which Hunter agreed to pay Jennen the deficiency of $14,715.77 plus $750 in attorneys’ fees and $500 interest. On February 23, 1976, a deficiency judgment was entered in favor of Jennen for $14,715.77.
After Hunter and his wife filed a chapter 7 bankruptcy petition, Jennen commenced an adversary proceeding in the United States Bankruptcy Court for the Eastern District of Washington, seeking a determination of the dischargeability of Hunter’s debts to Jennen pursuant to 11 U.S.C. § 523 (1982).[1] This adversary proceeding subsequently was transferred to the United States Bankruptcy Court for the District of North Dakota.[2] The bankruptcy court determined that Hunter persuaded Jennen to send him the initial $15,000 by intentional misrepresentations as to the nature of the venture and the scope of Jennen’s would-be investment. Consequently, the court concluded that the $15,000 debt was nondischargeable under section 523(a)(2)(A).
The bankruptcy court further found the facts surrounding the $12,000 loan to be unclear, but determined that Jennen had sent the money to Hunter based solely on Hunter’s assurances that he would repay the loan within thirty days. The court determined that it was not until after Hunter had cashed the check that Jennen inquired about possible security for the loan and Hunter made further misrepresentations. Thus, the court found that because Jennen had not relied on Hunter’s misrepresentations about possible security in advancing this money, the $12,000 debt was dis-chargeable in bankruptcy.
The bankruptcy court then turned to the question of how to apportion the $12,284.23 foreclosure sale proceeds between the nondischargeable $15,000 debt and the $12,000 dischargeable debt. It found that although the parties intended the mortgage to cover both debts, they had offered no testimony as to how they intended to apply the sale proceeds toward the underlying debts. In view of the congressional mandate that exceptions to dischargeability should be narrowly construed, the bankruptcy court applied a “first-in, first-out” standard (FIFO) and concluded that the proceeds should be applied against the $15,000 debt, which was the first incurred, leaving a nondischargeable balance of $2,715.77. The bankruptcy court concluded that the remaining balance of $13,250 (including the $1,250 in attorneys’ fees and interest) was attributable to the $12,000 debt and must therefore be discharged. Thus, the bankruptcy court entered judgment for Jennen for $2,715.77.
Jennen filed a motion seeking amended findings of fact and additional findings of fact under Fed.R.Civ.P. 52, which the court denied. Jennen then appealed to the district court, arguing that the bankruptcy court had erred in: (1) finding the $12,000 debt to be dischargeable, (2) applying the foreclosure sale proceeds solely to the nondischargeable debt, and (3) failing to award him attorneys’ fees, interest and costs.
The district court affirmed the bankruptcy court’s determination that the $12,000 debt was dischargeable on the ground that Jennen had not shown by clear and convincing evidence that Hunter procured the loan by fraudulent misrepresentations. It disa *1129 greed, however, with the bankruptcy court’s apportionment of the mortgage foreclosure proceeds entirely to the nondischargeable debt. The district court concluded that because the debts had been consolidated into a single note and mortgage, and were now represented by a judgment indivisible on its face, and because Jennen had established that one of the underlying debts had been fraudulently induced, the proceeds should be allocated to the two debts according to their proportionate share in the total mortgage. Thus, it allocated $6,879.17 (56% of $12,284.23) of the proceeds to the nondisehargeable $15,-000 debt, leaving Hunter with a nondischargeable balance of $8,120.83. The court declined to award Jennen attorneys’ fees, interest or costs as contemplated by the January 1976 settlement agreement on the ground that the agreement had been entered after Jennen obtained his deficiency judgment.
II. DISCUSSION.
A. Dischargeability of the $12,000 Debt.
In his appeal, Jennen challenges the findings of fact made by the bankruptcy court and approved by the district court[3] that Hunter did not induce Jennen to send him $12,000 in March 1975 by means of fraudulent misrepresentations.
We have reviewed the record. This essential finding, leading to the conclusion of dischargeability of the $12,000 debt, cannot be characterized as clearly erroneous. Accordingly, the determination of dischargeability of the $12,000 debt made by the bankruptcy court and approved by the district court will stand.
. B. Apportionment of Payment.
The apportionment of the foreclosure sale proceeds raises a question of first impression arising out of an unusual factual situation. The bankruptcy court first considered the dischargeability of the two underlying debts. But the parties had consolidated these two debts when Hunter gave Jennen a note and mortgage on his home for the total amount of the indebtedness. Jennen foreclosed on the mortgage and received $12,284.23. Thus, a legal question arose as to how the mortgage foreclosure proceeds should be apportioned between the two underlying debts, one later held to be dischargeable in bankruptcy and the other nondisehargeable, in the absence of any evidence of how the parties intended to apply those proceeds. The briefs suggest three possibilities.
First, Hunter contends that we should adopt the approach of the bankruptcy court, who utilized the normal commercial “first-in, first-out” standard, and apply the proceeds against the first debt incurred— the $15,000 debt held, to be nondischarge *1130 able. The result of this approach would be to leave Hunter with a nondischargeable debt of $2,715.77. We must reject this approach. The bankruptcy court employed this approach in order to give effect to the objectives of the federal bankruptcy law which require “that exceptions to dischargeability * * " be strictly construed [against the creditor and liberally construed in favor of the debtor] so as to effectuate the Congressional policy of permitting [a debtor] a fresh start.” In re Rahm, 641 F.2d 755, 756-57 (9th Cir.), cert, denied, 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981).
These considerations, however, are applicable only to honest debtors. Different considerations apply once a creditor has carried the burden of showing that a debt falls within the fraud exception to discharge and, therefore, has demonstrated the debtor’s dishonesty as to that debt. When dishonesty is demonstrated with respect to a specific debt, the debtor “is no longer entitled to the benefit of debtor rehabilitation policy considerations.” In re Wilson, 12 B.R. 363, 370 (Bankr.M.D.Tenn.1981); accord In re Carter, 11 B.R. 992, 998 (Bankr.M.D.Tenn.1981); see also In re Fasulo, 25 B.R. 583, 585 (Bankr.D.Conn. 1982) (court should provide full relief to creditors when debts excepted from discharge). Congress established a fraud exception to discharge “to discourage fraudulent conduct and to ensure that relief intended for honest debtors does not inure to the benefit of the dishonest.” In re Wilson, 12 B.R. at 370. Application of the FIFO approach, which in the circumstances of this case would favor Hunter by effectively discharging over 80% of the debt held to be nondischargeable, would unjustly reward Hunter and penalize Jennen with respect to a debt procured through Hunter’s fraud. We therefore reject that approach in this case.
A second possible approach is that urged by Jennen. He asserts that the foreclosure proceeds should first be applied against the dischargeable debt, and only then to the nondischargeable debt, leaving a balance of $14,715.77 as nondischargeable debt. Jennen contends that this approach is necessary to ensure that he will be able to collect on the nondischargeable debt and that Hunter will not be excused from the consequences of his fraud.
This approach, however, is essentially punitive because it would require bankruptcy courts to apply proceeds against debts deemed dischargeable, thereby defeating the protections intended for honest debtors. It is apparent that Jennen is really concerned that Hunter has obtained a discharge on the $12,000 loan even though he allegedly “defrauded” Jennen in obtaining that loan. Nonetheless, Jennen has litigated and lost his contention in this regard. He should not now be permitted to obtain through the back door by apportionment of the proceeds a result which has seemingly been foreclosed by a determination on the merits of his claim. In this regard, we agree with the view of the Second Circuit that “it [does not] seem equitable for a bankrupt to be deprived of discharge on all his indebtedness to a particular creditor simply because a small portion of it was procured dishonestly.” In re Danns, 558 F.2d 114, 116 (2d Cir.1977).
The third approach is that taken by the district court, apportioning the foreclosure proceeds between the two debts in accordance with their proportionate share of the total debt. Because we think that this approach is “the remedy best suited to the harm” in this case, see Garnatz v. Stifel, Nicolaus & Co., 559 F.2d 1357, 1360 (8th Cir.1977), cert. denied, 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978), we adopt it. It is clear from the record in this case that the total indebtedness arose from the course of dealings between the parties relating to Hunter’s real estate business in Florida. The parties obviously considered the indebtedness from both transactions as constituting a single balance, as was demonstrated when they subsequently incorporated the two separate loans into a note and real estate mortgage for the total amount of the indebtedness. The separation of the indebtedness into the two under *1131 lying components occurred only because the provisions of the Bankruptcy Code which make some debts nondischargeable and others dischargeable. of
We think this approach best balances the relevant policy objectives, by ensuring that Jennen will be fully compensated for the debt which was fraudulently induced while Hunter will be relieved of a debt not shown to have been fraudulently induced. Accordingly, we affirm the district court’s application of the proceeds between the two debts on a proportionate basis, leaving Hunter with a nondischargeable debt of $8,120.83.
C. Attorneys’ Fees, Interest and Costs Relating to the Foreclosure.
After the foreclosure sale but prior to entry of the deficiency judgment, the parties entered an agreement in which Hunter agreed to pay Jennen $15,965.77. This figure represented the $14,715.77 deficiency resulting from the foreclosure sale, plus $750 in attorneys’ fees incurred in connection with the sale, and $500 interest due on a senior mortgage which Jennen became obligated to pay. In addition, Hunter also agreed to pay all reasonable attorneys’ fees and costs incurred by Jennen if it became necessary for Jennen to execute on the deficiency judgment.
The bankruptcy court attributed the $1,250 in attorneys’ fees and interest incurred in connection with the foreclosure sale to the $12,000 dischargeable debt and, consequently, held that sum to be dis-chargeable. The court also denied Jennen’s post-trial motion for attorneys’ fees incurred in the bankruptcy proceedings. The district court affirmed on the ground that the bankruptcy rules make no provision for an award of attorneys’ fees to a prevailing creditor, and that Jennen had not made a showing that he was entitled to enforcement of the agreement.
Ancillary obligations such as attorneys’ fees and interest may attach to the primary debt; consequently, their status depends on that of the primary debt. See In re Foster, 38 B.R. 639, 642 (Bankr.M.D. Tenn.1984); In re Chambers, 36 B.R. 42 (Bankr.D.Wis.1984); In re Sposa, 31 B.R. 307 (Bankr.D.Va.1983). Moreover, when the parties have included a provision authorizing recovery of attorneys’ fees in a contractual agreement, and those fees are incurred in connection with a debt determined to be nondischargeable in bankruptcy, some courts have permitted recovery of reasonable attorneys’ fees as part of the compensatory relief to which the creditor is entitled under 11 U.S.C. § 523(a)(2)(A,). See, e.g., In re Foster, 38 B.R. at 642; In re Fasulo, 25 B.R. at 586; In re Carter, 14 B.R. at 422.
Jennen incurred $1,250 in attorneys’ fees and interest in foreclosing on the mortgage he had taken on Hunter’s home to secure payment of the $15,000 and $12,-000 debts. In making its finding that this $1,250 must be attributed to the $12,000 dischargeable debt, the bankruptcy court relied upon an erroneous legal standard. See supra at 1129-30. Consequently, that finding cannot stand. If these charges are ancillary to the $15,000 nondischargeable debt, Jennen may be entitled to recover them, or those charges may be subject to apportionment between the dis-chargeable and nondischargeable parts of the underlying indebtedness. Because the record before us is insufficient on this issue, we remand this case to the district court with directions to remand the case to the bankruptcy court for further proceedings on this issue. On remand, Jennen may also present evidence on his claim for attorneys’ fees incurred in these bankruptcy proceedings.
D. Interest on Nondischargeable Indebtedness.
Jennen also claims entitlement to interest on the nondischargeable debt at the rate of 9% under the terms of the January 1976 agreement. Although Jennen included in his complaint a claim for interest at 9% per annum from January 18, 1976 on the alleged nondischargeable debt, our review of the record discloses that he has not pressed *1132 this claim in either the bankruptcy court or the district court. We decline to reach or decide this claim raised for the first time on appeal. However, inasmuch as interest may attach to the underlying indebtedness as an ancillary obligation, see In re Foster, supra, In re Fasulo, supra, we think it appropriate to permit Jennen to seek interest from the bankruptcy court on remand.
Accordingly, we affirm the decision of the district court on the dischargeability and apportionment issues and remand this case to the district court with instructions to remand to the bankruptcy court for entry of a final judgment that the indebtedness owed by Hunter to Jennen in the amount of $8,120.83 is not dischargeable.
The bankruptcy court on remand should also dispose of the unresolved issues as outlined in this opinion as follows:
(1) Whether all or any part of the $750 in attorneys’ fees and $500 in interest costs relating to the foreclosure proceedings which Hunter agreed to pay in the January 18, 1976 agreement is attributable to the nondischargeable debt and should be awarded in this case.
(2) Whether Jennen is entitled to interest on the nondischargeable debt and the appropriate rate of that interest, if interest is awarded.
(3) Whether, under all the circumstances, the agreement to pay attorneys’ fees incurred in the collection of the foreclosure deficiency is attributable to the nondischargeable indebtedness and should be awarded in this case, and, if so, the amount thereof.
Affirmed and remanded.

. 11 U.S.C. § 523(a)(2)(A) (1982) states:
(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider’s financial condition[.]

. The court dismissed the proceedings against Mary Ellen Hunter, a nominal appellant on appeal, finding that she had no meaningful involvement in any of the relevant transactions.

. As a threshold matter, we consider the proper standard of review to be applied by a district court in reviewing an appeal from the bankruptcy court. In this case, the district court did not set forth the standard of review it applied, and Hunter contends that the court erroneously reviewed the case de novo. This question has created some confusion. In the wake of the Supreme Court's decision ,in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (holding unconstitutional the jurisdictional grant contained in the Bankruptcy Reform Act of 1978, Pub.L. 95-598, 92 Stat. 2549), the Judicial Conference of the United States developed emergency resolutions relating to bankruptcy jurisdiction, which many courts adopted as emergency local rules to permit their continuing operation until Congress acted to reform the 1978 Act. Under these rules, the district court was not bound to give any deference to the findings of the bankruptcy judge, and the appealing party had the right to seek de novo review in the district court. Under the new bankruptcy rules, which became effective August 1, 1983, however, the district court is bound by the clearly erroneous standard in reviewing findings of fact by the bankruptcy court and must accord "due regard * * * to the opportunity of the bankruptcy court to judge the credibility of the witnesses.” Bankruptcy Rule 8013. Accord In re Morrissey, 717 F.2d 100, 104-05 (3d Cir. 1983); McFarland v. Farmers Prod. Credit Ass'n, 38 B.R. 374, 375 (N.D.Iowa 1984); Brookfield Prod. Credit Ass’n v. Borron, 36 B.R. 445, 446 (E.D.Mo.1983), aff’d, 738 F.2d 951 (8th Cir.1984). Thus, the district court was bound by the findings of fact made by the bankruptcy court unless it determined them to be clearly erroneous.