**In re Karen Marie ZENTZ, Debtor.**

**Terry ADAMS, Plaintiff,**

v.

**Karen Marie ZENTZ, Defendant.**

**Bankruptcy No. 89–42988–2.
Adv. No. 90–4038–2.**

United States Bankruptcy Court,
W.D. Missouri.

June 28, 1993.

Anthony L. Anderson, Clayton, MO, for plaintiff.

Karl H. Timmerman, Kansas City, MO, for defendant.

### MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

This case comes before the Court on remand from the district court, 151 B.R. 141. That court seeks a more detailed consideration of Plaintiff's dischargeability complaint under 11 U.S.C. § 523(a)(6) (1988). The Court duly scheduled a conference with counsel for the two parties and they agreed that the Court should rule the § 523(a)(6) issue based on the record made at the previous hearing.

### FACTS

Plaintiff brought this dischargeability action against Debtor, his ex-wife, to determine the dischargeability of a $7,500 award of attorney fees assessed against Debtor in Plaintiff's favor at the conclusion of proceedings to determine child custody. The complaint was originally brought in two counts. The first count sought non-discharge of the debt under 11 U.S.C. § 523(a)(5) (1988) as a debt to a former spouse for maintenance or support; the second count alleged that the debt was non-dischargeable under 11 U.S.C. § 523(a)(6) (1988) as a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." This Court denied both counts of the dischargeability complaint and held the debt to be dischargeable. On appeal, the courts above fully considered and disposed of the count under § 523(a)(5), but the count under § 523(a)(6) was not fully considered above and has now been remanded back to this Court for a more detailed consideration of that count.

Under any view of the facts in this case, the behavior of Debtor Karen Marie Zentz has been deplorable with respect to her responsibilities under the child custody agreement entered in the couple's dissolution proceeding. The judge in the circuit court made findings of fact including that Debtor had relocated the minor child without informing Plaintiff, the child's father, of the child's whereabouts; that Debtor had, without just cause, unilaterally terminated all custody and visitation of Plaintiff with the minor child for a period of six months; that debtor had imparted her "deep and passionate hatred of her former husband" to the minor child; had "deliberately attempted to make him look evil in the eyes of the child"; and that she had "met with considerable success in her attempts to alienate the love and affection that Terri Lynn had previously shown her father." That court based its findings on Debtor's testimony, "her character, conduct demeanor and attitude while on the stand as well as the numerous letters" introduced into evidence. Finally, the court lamented that "[t]here is no reason for the court to hope or believe that the attitude of Mrs. Zant [sic] will change or that she will abide by any order made by this Court." *Zant v. Adams*, No. 872–0784, slip op. (Mo.Cir.Ct. 22d Judicial Cir. Mar. 28, 1988). That proceeding concluded with a temporary shift in physical custody from Debtor to Plaintiff. Ultimately, physical custody was returned to Debtor. On November 4, 1988, the circuit court sus-

tained Debtor's motion for increased child support and also sustained Plaintiff's motion for attorney fees and ordered Debtor to pay Plaintiff $7,500. *Zentz v. Adams,* No. 782–784, Memorandum for Clerk (Mo. Cir.Ct. 22d Judicial Cir. Nov. 4, 1988).

## DISCUSSION

When considering the exceptions to discharge, the courts have given voice to the competing policies evident in the bankruptcy code. On the one hand, the Code is designed to provide the debtor a "fresh start." *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (the Code "gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt."). At the same time, the Court has emphasized that the fresh start is only for those debtors who come to the court with clean hands. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("But in the same breath that we have invoked this 'fresh start' policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.' ").

In an effort to balance these competing interests, the exceptions to discharge are construed narrowly by the courts. *Gleason v. Thaw,* 236 U.S. 558, 561, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915) ("In view of the well-known purposes of the Bankruptcy Law, exceptions to the operation of a discharge thereunder should be confined to those plainly expressed."); *Belfry v. Cardozo (In re Belfry),* 862 F.2d 661, 662 (8th Cir.1988) ("Exceptions to discharge are construed narrowly"); *Caspers v. Van Horne (In re Van Horne),* 823 F.2d 1285, 1287 (8th Cir.1987) ("any evidence must be viewed consistent with the Congressional intent that exceptions to discharge be narrowly construed against the creditor and liberally against the debtor").

Section 523 of the Bankruptcy Code provides exception to discharge for certain kinds of debts. Among those is the exception in § 523(a)(6) which provides that "[a] discharge under section 727 ... does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (1988).

Initially, the Court observes that a finding of non-dischargeability under § 523(a)(6) is not restricted to cases of physical injury but also embraces economic injury as well. *See e.g., Barclays American/Business Credit, Inc. v. Long (In re Long),* 774 F.2d 875 (8th Cir.1985); *Coats State Bank v. Grey (In re Grey),* 902 F.2d 1479 (10th Cir.1990); *Ford Motor Credit Co. v. Owens,* 807 F.2d 1556 (11th Cir. 1987).

To make a case for non-dischargeability under § 523(a)(6), a creditor must prove that the debt in question is on account of an injury that was inflicted both willfully and with malice. "Willful" is interpreted to mean a deliberate or intentional act. *In re Long,* 774 F.2d at 880. The "malice" element requires that the act be targeted at the creditor such that the debtor either intended to cause the harm complained of or such harm was certain or almost certain to result from the debtor's act. *Id.* at 881.

The evidence presented leaves little doubt that Debtor's actions were willful. Her failure to comply with the court's custody orders resulted from a series of deliberate acts on her part. But her actions fall short of being malicious with respect to the economic harm claimed by Mr. Adams.

By employing malice as one of the elements for finding non-discharge of a debt under § 523(a)(6), the Code sets a high standard of proof. A finding of malice requires finding intent to do the claimed harm; a finding that the harm was caused through negligence or recklessness does not meet that high standard. *Cassidy v. Minihan,* 794 F.2d 340, 344 (8th Cir.1986) ("Congress intended to bar the discharge of intentionally inflicted injuries.... Mini-

han's conduct reflected, at most, reckless disregard for the risks involved"); *Miller v. Held (In re Held)*, 734 F.2d 628, 629 (11th Cir.1984) ("by adopting the requirement that the conversion be willful and malicious, Congress expressly overruled prior case law that had refused dischargeability when the conversion occurred innocently or recklessly"); *L.D.J. v. L.F.S. (In re L.F.S.)*, 148 B.R. 897 (Bankr.W.D.Mo. 1992) ("The standard is one of intent, and mere recklessness is not sufficient."); *Bybee v. Geer (In re Geer)*, 137 B.R. 37, 41 (Bankr.W.D.Mo.1991) ("more than recklessness is required for an exception under § 523(a)(6)"). As the *Long* court stated in relation to debtors who violate security agreements, "[d]ebtors who willfully break security agreements are testing the outer bounds of their right to a fresh start, but unless they act with malice by intending or fully expecting to harm the economic interests of the creditor, such a breach of contract does not, in and of itself, preclude a discharge." *In re Long,* 774 F.2d at 882.

 "A determination of the parties' intent is a question of fact." *First National Bank v. Phillips (In re Phillips)*, 882 F.2d 302, 305 (8th Cir.1989). The party objecting to discharge has the burden of proving his case by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The evidence presented at trial consisted of the March 28, 1988, Findings of Fact and Conclusions of Law entered by the judge in state court custody proceedings; the November 4, 1988, attorney fee order entered by the same judge; and the testimony of Debtor and of Mr. Adams. The evidence fails to demonstrate that Debtor acted with malicious intent as regards the attorney fees awarded to Plaintiff in state court. The inference that this Court draws from the evidence presented at trial is that Debtor intended to deprive Mr. Adams of custody and visitation with his daughter and intended to cause Mr. Adams' daughter to dislike him just as much as Debtor does. The evidence does not support a finding by this Court either that it was Debtor's object to cause Mr. Adams economic harm or that such harm was certain to be caused by her actions.

 The district court observed that the issue of whether Debtor's actions were willful and malicious is only one of the issues required to find nondischargeability under § 523(a)(6). The other element is "whether the attorney fee debt was a result of that willful and malicious conduct." *Adams v. Zentz,* No. 90–0864–CV–W–9 (W.D.Mo. Mar. 25, 1993). This element is equally critical to a nondischargeability finding; and this element is troublesome to Plaintiff in this case. Plaintiff had the burden of proving that the judgment for attorney fees entered in his child custody proceedings was intended to compensate him for the willful and malicious injury done to him by Debtor.

As this Court observed in its previous opinion on this issue, this judgement for attorney fees came out of a court of equity in a domestic relations case. The significance of that fact is that the broad grant of discretion to that court in determining when it is appropriate to make an award of attorney fees makes it impossible for this Court to draw any inference whatever as to the basis for that award.

Missouri statutes gives the court authority to award attorney fees in a domestic relations case:

> The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

Mo.Rev.Stat. 452.355 (Cum.Sup.1992). The circuit court is free to consider "all relevant factors." Thus, the attorney fee award may have been based upon considerations of financial resources; it may have been based on Debtor's contempt of the court's previous orders; and it may have been because Debtor's conduct required

the expense of attorney fees. But the naked fact that attorney fees were awarded in this proceeding gives this Court no basis to conclude that the reason for that award was recompense to Plaintiff for the economic injury cause by Debtor's willful and malicious acts.

Moreover, the document sustaining the request for attorney fees and making the award is of no assistance to this Court in determining the basis for that award. The attorney fee award was made with a handwritten "Memorandum for Clerk." It states in its entirety:

> Sustained. Petitioner ordered to pay the sum of $7,500 to Respondent for and as Attorney's fees.

*Zentz v. Adams,* No. 782–784, Memorandum for Clerk (Mo.Cir.Ct. 22d Judicial Cir. Nov. 4, 1988). Again, the memorandum is utterly barren of any evidence of the judge's basis for making the attorney fee award.

 Attorney fees are routinely included in the non-dischargeable debt under § 523(a)(6) when they are included in a judgment for damages due to willful and malicious injury and are ancillary to that judgment. *Jennen v. Hunter (In re Hunter),* 771 F.2d 1126, 1131 ("Ancillary obligations such as attorneys' fees and interest may attach to the primary debt; consequently, their status depends on that of the primary debt."); *See e.g., Stokes v. Ferris (In re Stokes),* 150 B.R. 388 (W.D.Tex.1992) (attorney fees were non-dischargeable because they were part of statutory damages under Texas' Deceptive Trade Practices Act); *Dutton v. Schwartz,* 21 B.R. 1014 (D.Mont.1982) (attorney fees were non-dischargeable because included as part of state court judgment based on willful and malicious conduct); *Newsome v. Culp (In re Culp),* 140 B.R. 1005, 1015 (Bankr. N.D.Okla.1992) (attorney fees were non-dischargeable where provided for in a note which was itself found to be non-dischargeable).

The above cited cases involved attorney fee awards which were either part of a statutory cause of action or part of the recoverable damages under a tort or contract action. In all cases, they were ancillary to a primary debt recoverable on account of willful and malicious injury.

In this case, there is no such primary debt based on willful and malicious injury. The attorney fees in question were ancillary to a state court custody order. The legal basis of that state court order is the best interests of the child. Mo.Rev.Stat. 452.375.2 (Cum.Sup.1992) ("The court shall determine custody in accordance with the best interest of the child."); *see also Margolin v. Margolin,* 796 S.W.2d 38, 48 (Mo. Ct.App.1990) (joint custody is to be granted, as in all other cases, "according to the best interests of the child"); *Rumbolo v. Rumbolo,* 759 S.W.2d 894, 895 (Mo.Ct.App. 1988) ("In a custody proceeding the welfare of the children is the primary consideration."). The focus of the state court proceeding was upon the welfare of the minor child, not upon any injury done to Mr. Adams. Therefore, the attorney fees in question are not ancillary to any type of judgment based upon injury to Plaintiff; they are ancillary to a proceeding which focused upon Debtor's actions as they related to the welfare of the child. This Court finds no basis in the state court proceeding to conclude that Plaintiff's attorney fee award is a debt on account of willful and malicious injury done to him by Debtor.

## CONCLUSION

Upon this Court's reconsideration of Plaintiff's complaint to find non-dischargeable, under 11 U.S.C. § 523(a)(6) (1988), a $7,500 attorney fee judgment debt owed to him by Debtor, in accord with the above discussion, Plaintiff's complaint is DENIED and the Court finds that the debt is DISCHARGED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.