**In re Billy Gene WILCOX, a/k/a
Bill Wilcox, a/k/a William
G. Wilcox, Debtor.**

**Steve D. BURMEISTER, Sandra D.
Wilcox Thuston and Roy Dean
Thuston, Plaintiffs,**

**v.**

**Billy Gene WILCOX, a/k/a Bill
Wilcox, a/k/a William G.
Wilcox, Defendant.**

**Bankruptcy No. 94–53340.
Adv. No. 95–4041–KMS.**

United States Bankruptcy Court,
W.D. Missouri.

April 9, 1996.

632

Steve D. Burmeister, Burmeister, Laurent & Taylor, Independence, MO, for Plaintiffs.

James T. Pietz, Blevins, Pietz & Myers, P.C., Independence, MO, for Defendant.

## MEMORANDUM OPINION AND ORDER

KAREN M. SEE, Bankruptcy Judge.

In this Chapter 7 case, debtor's former wife and father-in-law seek a judgment of nondischargeability of debts from a Property Settlement Agreement and a Decree of Dissolution of Marriage pursuant to 11 U.S.C. § 523(a)(2)(A) for debts incurred by fraud; (a)(5) for support debts; and (a)(6) for debts due to willful and malicious injury. The wife's lawyer also seeks a judgment of nondischargeability for ancillary attorney fees awarded to him in a contempt action for debtor's violation of the Decree.

Based on the evidence at trial, the court finds the debts are nondischargeable under § 523(a)(2)(A) and (a)(6). The court has jurisdiction over this core proceeding and may enter final orders pursuant to 28 U.S.C. § 1334(b) and § 157(b)(2)(A), (I), (J) and (O).

## I. FACTS

During their marriage, debtor Billy Gene Wilcox and his wife Sandra Wilcox Thuston owned a piece of real property in Polk County, Missouri jointly with her father, Roy Thuston. Before this bankruptcy, as part of their divorce debtor and Sandra executed a Property Settlement Agreement providing for sale of the property and distribution of proceeds. On June 10, 1993, the Circuit Court of Jackson County, Missouri adopted the Settlement Agreement and entered a Decree of Dissolution of Marriage. It ordered:

> [T]he real estate and property ... at Route 1, Box 1567 ... shall be sold and the proceeds, after all expenses and costs related thereto, shall be split one-third to Petitioner, one-third to Respondent and one-third to Petitioner's father, Roy Thuston, and Respondent shall pay any and all indebtedness thereon until sold and shall hold the Petitioner harmless therefrom.

Debtor misrepresented the expected and actual sale price to plaintiffs. He represented that after deduction of sale expenses, as provided by the Decree, the net profit to be divided by thirds would be only $2,400. Debtor concealed the actual price and his intention to deduct additional amounts after closing as his alleged expenses, thus resulting in a greater distribution to himself.

As recited in the Decree, before entry of the Decree Sandra's father was removed from the title. All three owners executed a warranty deed to Wilcox and Sandra Wilcox Thuston, husband and wife. The warranty deed was to be held in trust, unrecorded, by debtor's attorney, who would deliver it to the title company at closing. Sandra also executed a quitclaim deed, to be held in trust, unrecorded, by her attorney, who would deliver it to the title company at closing. Through his attorney, Wilcox persuaded Sandra and her attorney to convey title to Wilcox by the quitclaim deed well before closing, supposedly to close a sale readily.

The sale closed on September 4, 1993. The parties understood that no one would attend the closing in Polk County, a three hour drive from Kansas City. The title company was supposed to mail the check to Wilcox's lawyer for deposit into his trust account and distribution to the three parties. Pursuant to his plan to conceal the net profit and secretly increase the distribution to himself, Wilcox drove to the closing and appeared unexpectedly in order to obtain the check. Immediately after closing he cashed the check at a local bank. Wilcox knew this was contrary to the parties' understanding that the title company would mail the check to Wilcox's lawyer. Debtor knew that if plaintiffs had known he had concealed the amount of proceeds and planned to divert the funds, plaintiffs would have interpleaded the funds. Wilcox's lawyer warned him against this course of action, but Wilcox chose to deliberately violate the Agreement and Decree and divert the funds.

Although Debtor said the sale would net only $2,400 for distribution, Sandra subsequently learned from the title company that after sale expenses the net profit exceeded $12,000. Wilcox concealed the fact that he had violated the Agreement and Decree by crediting himself for improvements made during the marriage and by misrepresenting the value of a mobile home on the property.

The Decree provided only for deduction of sale expenses from the proceeds. Neither the Decree nor the Separation Agreement provided separate reimbursement to Wilcox for alleged improvements to the property during the marriage. Wilcox had no unilateral right to determine that he was entitled to a larger share.

On August 23, 1994, the Circuit Court entered an Order finding Wilcox in contempt for intentionally violating the Decree by failing to distribute the net proceeds pro rata after deduction of sale costs. This court finds, as did the state court, that Wilcox intentionally violated both the Agreement and Decree. The Contempt Order directed Wilcox to pay Sandra and Roy Thuston $4,934 each as their share of net proceeds, and Sandra's lawyer, Steve Burmeister, $1,500 in attorney fees. Wilcox has refused to comply with the Agreement, Decree and Contempt Order and pay the plaintiffs.

## II.  LEGAL DISCUSSION

■ The evidentiary standard in dischargeability cases is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Plaintiffs' evidence met this standard.

### A.  Section 523(a)(2)(A): Fraudulent Misrepresentations

Section 523(a)(2)(A) excepts from discharge a debt for money, property, or services to the extent obtained by false pretenses, a false representation, or actual fraud. Cases have varied as to what degree of reliance by the creditor on the misrepresentation is required. Courts have adopted standards ranging from mere actual reliance to justifiable reliance to reasonable reliance, which in some instances imposes a duty to investigate the representation.

■ Pursuant to a Supreme Court decision entered after trial in this case, a creditor must prove he justifiably relied on a fraudu-

lent misrepresentation. *Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). Justifiable reliance is a lesser standard than reasonable reliance and does not require a creditor to independently investigate a representation unless the circumstances would be apparent to one of his knowledge and experience or a warning signal exists that the debtor is deceiving the creditor. *Field,* —— U.S. at ——, 116 S.Ct. at 444.[1]

■ In the present case, plaintiffs justifiably relied on debtor's intentional misrepresentations as to the reason debtor requested a quitclaim deed to himself before the sale; the amount of profit to be received and distributed equally; the amount actually received; and the understanding that no one would attend the closing, but that the title company would mail the proceeds check to debtor's lawyer for deposit in his trust account for equal distribution.

Wilcox obtained the proceeds by false pretenses, false representations and actual fraud within the meaning of § 523(a)(2)(A). Wilcox misrepresented to Sandra and Roy that the net profit would be $2,400 when in fact he knew the sale would net over $12,000. Wilcox also made a fraudulent representation by concealing his plan to obtain possession of the closing check, deduct his alleged expenses for marital improvements, and obtain an undisclosed larger share for himself.

Plaintiffs were under no duty to independently investigate Wilcox's statements because circumstances surrounding the misrepresentations did not put plaintiffs on notice that he was deceiving them. In fact, Wilcox went to great lengths to hide his deceit by structuring the sale and distribution of proceeds to insure that he alone had control of the check and access to information on the profit. Wilcox not only made representations personally, but he also engaged his lawyer in the process.

---

1. Prior to *Field v. Mans,* in the Eighth Circuit a creditor had to prove only that he actually relied on the representation. There was no requirement that the reliance be reasonable. *In re Ophaug,* 827 F.2d 340, 343 (8th Cir.1987). For many courts, *Field v. Mans* lowered the standard from the reasonable level, but in the Eighth Circuit it raised the standard slightly to the justifiable level. It does not appear that *Field v. Mans* effected a significant change in the reliance element of § 523(a)(2)(A) in the Eighth Circuit.

Explanations by Wilcox's lawyer gave extra weight and credibility to the alleged reasons for Wilcox's actions, such as obtaining title by quitclaim deed before closing, supposedly to make the sale process easier. In fact, the reasons were so Sandra, removed as a record owner, could not get information on the proposed sale, and so Wilcox could get the check, thus placing the funds beyond plaintiffs' reach. Wilcox's conduct satisfies the requirements of § 523(a)(2)(A). Plaintiffs' reliance meets and exceeds the justifiable standard of *Field v. Mans.* It meets the higher but inapplicable reasonable reliance standard.

### B. Section 523(a)(6): Willful and Malicious Injury

■ Intentional conversion of property can be an injury under § 523(a)(6). Wilcox's conversion of the co-owners' share of proceeds constitutes willful and malicious injury under § 523(a)(6). *In re Beasley,* 62 B.R. 653, 655 (Bankr.W.D.Mo.1986). Conversion does not lie for a claim for money representing a general debt, but conversion will lie for diversion of funds held in the custody of another for a specific purpose. *Haas v. Town and Country Mortgage Co.,* 886 S.W.2d 225, 227 (Mo.App.1994); *Biermann v. Gus Shaffar Ford, Inc.,* 805 S.W.2d 314, 318 (Mo.App.1991).

■ The sale proceeds were a specific fund and were in the custody of debtor only for him to perform his fiduciary obligations under the Agreement and Decree to distribute the net proceeds equally among the three co-owners. Thus, debtor's exercise of control, refusal to turn over the funds to the rightful owners, and diversion of the funds constitute a conversion.

■ In the Eighth Circuit, plaintiffs are required to establish separately each of the two statutory elements of willfulness and malice. The statutory requirements are satisfied if the conduct is 1) headstrong and knowing; and 2) targeted at the creditor in that the actions are certain or almost certain to cause the creditor financial harm. *In re Long,* 774 F.2d 875, 881 (8th Cir.1985).

■ Wilcox knowingly and deliberately deceived plaintiffs Sandra and Roy Thuston about the amount of net profit to be received and actually received. Under *Long's* definition, Wilcox intended that his actions would cause plaintiffs financial harm because he knew his conduct would deprive plaintiffs of funds they were entitled to under the Settlement Agreement and Decree. Thus, Wilcox's actions were headstrong and knowing, and also were targeted at plaintiffs. Wilcox's conduct renders the debts owed to Sandra and Roy Thuston nondischargeable pursuant to § 523(a)(6).

### C. Nondischargeability of Ancillary Attorney Fee Award

■ The attorney fee award to Sandra's lawyer in the contempt order is a nondischargeable debt. Attorney fees incurred in the present action might not be recoverable, but attorney fees incurred earlier, in connection with the underlying nondischargeable debt, may be nondischargeable along with the primary debt. As explained in *Jennen v. Hunter,* 771 F.2d 1126, 1131 (8th Cir.1985):

> Ancillary obligations such as attorneys' fees and interest may attach to the primary debt; consequently, their status depends on that of the primary debt.

*In re Reimer,* 182 B.R. 816, 817 (Bankr. E.D.Mo.1995), is similar to the present case. *Reimer* involved an attorney fee award in child support proceedings arising from a dissolution of marriage and a finding of nondischargeability of the underlying debt as a willful and malicious injury under § 523(a)(6). Citing *In re Miera,* 926 F.2d 741, 745 (8th Cir.1991), *Reimer* explained that the language of § 523(a)(6) focused on the nature of the conduct rather than the nature of the debt. *Reimer* next explained:

> Attorney fees are routinely included in the nondischargeable debt under section 523(a)(6) when they are included in a judgment for damages due to willful and malicious injury and are ancillary to that judgment.

182 B.R. at 817, citing *Adams v. Zentz,* 157 B.R. 145, 150 (Bankr.W.D.Mo.1993), and *Jennen v. Hunter, supra.*

In the present case, debtor's conduct was targeted at the plaintiff co-owners and was intended to harm or known to be certain to harm. In the Count under § 523(a)(6), attorney fees incurred in attempting to stop the conduct and compel compliance with the Decree are ancillary to the primary debt arising from debtor's willful and malicious conduct. The analysis of *Reimer* and the other cases cited above is also applicable to the Count for fraudulent misrepresentations under § 523(a)(2)(A). The fee award is ancillary to the primary debt arising from debtor's conduct in making intentional and fraudulent misrepresentations.

### D. Ancillary Attorney Fees if Award in Underlying Case is Payable Directly to Attorney

■ The fact that fees were ordered payable directly to counsel rather than to the party is not material. The client remains liable to her attorney, despite an order for the opponent to pay the attorney directly. Thus, for all practical purposes an order to pay the attorney directly is still an award to or for the party's benefit. The direct order simply cuts out the middle step of counsel collecting funds for the client and having the client turn over the funds.

■ Mo.Rev.Stat. § 452.355 permits the court to order a party to pay a reasonable amount for the other party's attorney fees in actions for dissolution of marriage or for fees incurred "after entry of judgment," such as fees awarded in this case in a contempt action to enforce the Decree. *LaBarge v. Berndsen*, 681 S.W.2d 441, 445[5] (Mo. banc 1984) (post-decree garnishment and appeals). Section 452.355 requires the award to be

based on the financial resources of each party, and provides that "the court *may* order that the amount be paid directly to the attorney, who may enforce the order in his name." [2]

Even though direct payment is permitted, the client still owes the attorney for the services, and if the opposing party does not pay as ordered, the client remains liable. Thus, the fee award remains an award to and for the client in the context of this dischargeability action.[3]

This was acknowledged in *Holliday v. Kline*, 65 F.3d 749, 751 (8th Cir.1995), where the attorney fees were alleged to be a nondischargeable support obligation under § 523(a)(5). It was noted that if the debtor's obligation to pay the spouse's attorney was discharged, the spouse-client still "could be liable" to her lawyer in quantum meruit, and the state court's consideration of "the financial resources of both parties" in ordering the fee award "would be for naught, simply because the award was in favor of [the attorney] and not [the client]." Under *Holliday*, it would be placing form over function to discharge attorney fee awards made payable to the attorney under the court's discretion, but which, in fact, also remain payable by the party to her lawyer.

■ This court follows the reasoning in *Holliday* but believes the "still could be liable" language would more precisely reflect the Missouri attorney fee statute for dissolution and post-dissolution proceedings if phrased as the client "still would be liable" for payment of her attorney's fees. A court might award fees of $1,000 where the attorney's bill is $2,000. The client is not ab-

---

2. For the history of the prior statute and the reasons it was amended, see *Schechter v. Fitzsimmons Industries, Inc.*, 627 S.W.2d 89 (Mo.App. 1981). Under the current statute direct payment of the fee award to the attorney is discretionary with the court. The reasons for direct payment are to simplify collection efforts by permitting the attorney to enforce the order in his own name, and to avoid situations which occurred before amendment where clients refused to cooperate in requesting an execution or clients, as the named parties, tried to evade payment of the attorney's fee award by agreeing between themselves to waive the judgment for the fee.

3. *State ex rel. Carlson v. Aubuchon*, 669 S.W.2d 294, 297 [3], [4] (Mo.App.1984), held that under the current (1978) version of § 452.355 an attorney can both enforce and protect a fee award made directly to counsel. However, it also held that where an award is "on account" for anticipated legal work, a practice noted as "not uncommon," if the award is made directly to counsel it is a final determination but enforceable only as to the part already earned. Thus, *Carlson* recognizes that even though the award may be made directly to counsel, it is still for the client's benefit and can be enforced only to the extent it has been earned.

solved of the obligation for payment of the entire $2,000 bill. The attorney is simply permitted to enforce payment in his own name against the other party for the $1,000 portion in the statutory award. The court can order a party to pay fees to or for the other party, but it cannot fix the fee to be paid by a party to her own attorney. *Green v. Green,* 770 S.W.2d 489, 492 [3] (Mo.App. 1989); *Dickinson v. Dickinson,* 631 S.W.2d 61, 62 [2] (Mo.App.1982). Thus, the client "would" rather than "could" still be liable for payment of the attorney's bill.

■ If the award is made to the lawyer for direct enforcement, it operates as a hold harmless or indemnification provision for the client-party and a directly enforceable award for her lawyer. If the client pays the entire fee to her lawyer, the opposing party remains liable. If the award is collected, it would go to the client to reimburse her payment to her lawyer.

■ In nondischargeability actions where attorney fee awards under the Missouri dissolution of marriage statute are recoverable as damages for ancillary fees, if the state court ordered the fee award payable directly to the lawyer, the lawyer can be named as a plaintiff, as in the present case, and receive a judgment for the fee award, consistent with the state statute and the state court decree, judgment or contempt order.

### E. Interest

Interest accrues at the Missouri statutory rate of nine percent from the date of demand, September 4, 1993, the closing date of the sale, as to plaintiffs Sandra and Roy Thuston for their share of sale proceeds. On the attorney fee award for Sandra Thuston and her attorney Steve Burmeister, interest shall accrue from August 23, 1994, the date of the Contempt Order.

### III. ORDER

For the reasons above,[4] IT IS ORDERED, ADJUDGED AND DECREED:

1. The debts owed by defendant Billy Gene Wilcox to Sandra Wilcox Thuston, Roy Dean Thuston, and Steve D. Burmeister are excepted from discharge in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6), and defendant shall pay all costs.

2. Judgment is entered against defendant and for plaintiff Sandra Wilcox Thuston for $4,934.00, plus pre-judgment and post-judgment interest at nine percent per annum from September 4, 1993.

3. Judgment is entered against defendant and for plaintiff Roy Dean Thuston for $4,934.00, plus pre-judgment and post-judgment interest at nine percent per annum from September 4, 1993.

4. Judgment is entered against defendant and for plaintiff Steve D. Burmeister for $1,500.00, plus pre-judgment and post-judgment interest at nine percent per annum from August 24, 1994.

---

**4.** These findings and conclusions are consistent with those made on the record at the close of trial, but due to additional review of the record, they may modify oral findings. Any findings of fact incorrectly labeled as conclusions of law shall be deemed findings of fact, and any conclusions of law labeled as findings of fact shall be deemed conclusions of law.